# IN THE SUPREME COURT OF TEXAS

════════════

No. 10-0451

════════════

NATURAL GAS PIPELINE COMPANY OF AMERICA, PETITIONER,

v.

WILLIAM JUSTISS, DARLENE JUSTISS, JOSEPH JUSTISS, TOMMY ALSPAUGH, JUDY ALSPAUGH, JOE DENTON MASHBURN, CHRISTINE MASHBURN, JOE DONALD MASHBURN, AND JUDY MASHBURN, RESPONDENTS

══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SIXTH DISTRICT OF TEXAS

══════════════════════════════════════════

**Argued October 5, 2011**

CHIEF JUSTICE JEFFERSON delivered the opinion of the Court.

Several homeowners alleged that noise and odor emanating from a gas company's compressor station caused a permanent nuisance. The company countered that because the homeowners' complaints predated their lawsuit by six years, limitations barred their action. A jury found that a permanent nuisance, which began just before the lawsuit was filed, diminished property values. The court of appeals affirmed the trial court's judgment for the homeowners. We agree with the court of appeals that some evidence supports the jury's finding on the accrual date.

We reach a different conclusion on damages, however. The homeowners testified that the nuisance decreased their property values, but none explained the factual basis for that conclusion.

While a nuisance undoubtedly can diminish values, the conclusory and speculative testimony here does not support such a finding. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for a new trial.

## I.       Background

In 1992, the Natural Gas Pipeline Company of America built a compressor station in Lamar County. Soon thereafter, area residents complained to the Company and to state regulators that the station's noise, odor, and lights interfered with the enjoyment of their homes. Between 1992 and 1998, William Justiss repeatedly called the Company and voiced his displeasure. In 1994, 1995, and 1996, he notified the Texas Natural Resources Conservation Commission (now known as the Texas Commission on Environmental Quality) about the noise and odor. Two years after the plant opened, Justiss's lawyer wrote to the Company, claiming that the station was causing the Justisses "total frustration and torment." The Company responded, through its lawyer, and stated that "the actual impact of the station on the Justiss' [sic] property [was] significantly less than described in [the] letter." A lawyer representing other residents also notified the Company that "the noise, vibration, lights, and related stimuli" were affecting the residents' "peaceful use of their homes and property."

The Company took minor remedial measures but consistently asserted that the plant complied with government permits. In June 1998, however, the TCEQ cited the station for a Category 5 odor violation—the most severe possible, indicating overpowering, highly objectionable, and nausea-inducing odors. The Company responded by changing the oil for the station's engines and raising the exhaust stacks.

Two months after the citation, twelve residents[1] sued the Company, alleging that the station's noise and odor constituted either a temporary or permanent nuisance. The Company moved for summary judgment, arguing that the permanent nuisance claim was time-barred because it accrued more than two years before the lawsuit. The trial court denied the motion, and the case proceeded to trial. The jury found that (1) the noise and odor from the station created a permanent nuisance, and (2) those conditions "first created a nuisance" on June 12, 1998, the date of the TCEQ citation. The jury determined that the nuisance affected only nine of the twelve plaintiffs and awarded $1,242,500 for their lost property value.[2] The trial court rendered judgment on the verdict.

The Company appealed, arguing that (1) limitations barred the permanent nuisance claim; (2) insufficient evidence supported the jury's permanent nuisance and damage findings; and (3) the trial court improperly awarded prejudgment interest because the plaintiffs failed to segregate past and future damages. ___ S.W.3d ___, ___. The court of appeals affirmed, *id.*, and we granted the Company's petition for review.[3] 54 Tex. Sup. Ct. J. 1156 (June 17, 2011).

---

[1] The twelve residents were William Justiss, Darlene Justiss, Joseph Justiss, Richard Rast, Tommy Alspaugh, Judy Alspaugh, Barry Cope, Tina Cope, Joe Denton Mashburn, Christine Mashburn, Joe Donald Mashburn, and Judy Mashburn.

[2] The awards for the nine plaintiffs were as follows:

| | |
|---|---|
| [William] and Darlene Justiss: | $540,000 |
| Joseph Justiss: | $175,000 |
| Tommy and Judy Alspaugh: | $270,000 |
| Joe Donald and Judy Mashburn: | $200,000 |
| Joe Denton and Christine Mashburn: | $57,500 |

[3] Crosstex Energy Services, L.P., LaSalle Pipeline, LP, and the Texas Pipeline Association submitted briefs as amici curiae in support of the petition for review.

The Company's arguments here generally mirror those it made in the court of appeals. We turn first to the limitations argument.

## II.     Limitations

A permanent nuisance claim accrues when the condition first "substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269–70 (Tex. 2004). To establish a limitations defense, the defendant must prove that a permanent nuisance occurred, if at all, more than two years before the landowner's lawsuit. *City of Abilene v. Downs*, 367 S.W.2d 153, 159–60 (Tex. 1963). Because the jury found that the Company first created a nuisance in 1998, the Company can prevail only if it has established, conclusively, that the claim accrued more than two years before then. *See Barnes v. Mathis*, 353 S.W.3d 760, 762 (Tex. 2011) (per curiam) ("When a party with the burden of proof loses at trial and asks an appellate court to render judgment in his favor, that party must show that the evidence conclusively established his entitlement to judgment.").

The Company argues that the residents' pre-1996 complaints conclusively prove that the landowners' claims accrued more than two years before suit was filed. According to the Company, the court of appeals erred in relying on three categories of evidence to conclude otherwise: (1) the Company's unequivocal denial of a nuisance, (2) the Category 5 citation, and (3) testimony that odors got worse in 1997 and 1998. The Company argues that this evidence cannot refute the plaintiffs' early characterization of "total frustration and torment."

4

We disagree. First, the Company's plant manager, Kevin Brown, disputed that characterization. Brown testified that he "never" noticed an odor that could give rise to a nuisance claim. That testimony supports the jury's determination that no nuisance existed before 1998—"never" encompasses pre-1998. In fact, the Company's lawyer had written to some of the landowners and stated that the noise and odor were not nearly as bad as the landowners claimed. The Company argues that we must disregard this evidence because considering it would deter a defendant from presenting alternative arguments. Defense strategy is not our concern. We are asked only to consider whether the evidence supports or rebuts the jury's verdict. A jury may consider evidence whether presented as part of the main defense or part of an alternative argument. Thus, the jury was free to accept the plant manager's and the lawyer's characterizations of conditions as they existed before 1998.

Even if the plaintiffs' pre-1998 complaints were undisputed, that would not conclusively decide this case. Evidence that no one disputes does not necessarily establish a fact as a matter of law. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) ("Undisputed evidence and conclusive evidence are not the same—undisputed evidence may or may not be conclusive, and conclusive evidence may or may not be undisputed."). Undisputed evidence can be susceptible to competing interpretations. *See id.* at 815 ("Undisputed evidence that reasonable jurors could disbelieve has two [logical inferences]: (1) it is true, or (2) it is not."). Conclusive evidence cannot.

Conclusive evidence often "concerns physical facts that cannot be denied." *Id.* We have held that a paternity test "conclusively proved" nonpaternity, *Murdock v. Murdock*, 811 S.W.2d 557, 560 (Tex. 1991), that documents that detailed a leaseholder's wrongful acts and were sent and received

by royalty owners "conclusively establish[ed]" that the royalty owners had knowledge of such wrongdoing, *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 203–09 (Tex. 2011), and that "readily accessible, publicly available documents" conclusively established that a leaseholder's alleged fraud could have been discovered through the exercise of reasonable diligence. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929–30 (Tex. 2011). In each of these situations, the evidence pointed to only one conclusion. Here, nothing about the plaintiffs' original complaints would require a finding of a pre-1996 nuisance.

The Company cites William Justiss's many phone calls objecting to the noise and odor, but the phone records show only that calls were made, not the substance of the actual complaints. Next, the Company notes that Justiss, in addition to complaining about noise, told plant workers that he and his wife could hardly breathe because of the fumes, and that the smell was making them sick. This incident, however, was memorialized only in an internal Company memorandum, which Justiss disputed, testifying that "[t]hat was their word . . . and they stretched it." Finally, the Company relies heavily on letters the residents sent: one indicating "total frustration and torment" and the other claiming that the noise disrupted the peaceful use and enjoyment of their property. But the jury could have viewed the correspondence and Justiss's numerous complaints as hyperbole, intended to force the Company to act. Or the jury could have determined the plaintiffs were overly sensitive—that a reasonable person would not have judged the odors intolerable at the time. *See City of Keller*, 168 S.W.3d at 814–15.

The jury heard more than the early complaints. Plant operations began in 1992. The plaintiffs testified that the plant's noise and odor escalated in 1997 and 1998. This account was

6

corroborated by Tommy Rutledge, a postal worker whose route took him through Justiss's neighborhood. Rutledge testified that the plant's odor became unbearable in the late 1990s. For that reason, Rutledge asked his supervisors if he could discontinue his route to that location. TCEQ issued the citation in 1998. The jury found that substantial interference did not occur until June 12, 1998, a date that corresponds with the postal worker's testimony, the TCEQ citation, and the plaintiffs' accounts. Some evidence supports this finding.

The Company argues that there would be no statute of limitations for permanent nuisance if a claim could be "revived" by evidence that conditions worsened. But we are dealing here with gradations. On one end of the scale, a nuisance can be established by a physical fact that is beyond dispute. If the nuisance consists of hazardous chemicals in the ground, the nuisance begins when the landowner knows or should have known that the chemicals were there. *See Tenn. Gas Transmission Co. v. Fromme*, 269 S.W.2d 336, 338 (Tex. 1954) (holding that limitations began to run when the defendant began wrongfully discharging water containing harmful chemicals on the plaintiff's land, and "not on the date when the extent of the damages to the land were fully ascertainable"). The result does not necessarily vary with the amount of chemicals. If the nuisance involves largely subjective criteria like smell and sound, however, the analysis is necessarily more fact dependent. *See City of Abilene*, 367 S.W.2d at 160 (distinguishing a nuisance claim based on noxious fumes and odors from the water-based claim in *Fromme* and holding that the nuisance claim did not accrue when a sewage disposal system became operational but instead accrued when "operations of [the] sewage disposal system were such as to constitute a nuisance"). The point at which an odor moves from unpleasant to insufferable or when noise grows from annoying to

7

intolerable "might be difficult to ascertain, but the practical judgment of an intelligent jury [is] equal to the task." *Merrill v. Taylor*, 10 S.W. 532, 534 (Tex. 1888).

Both parties presented evidence to show when the nuisance began. The jury could have determined that the nuisance began in 1994, 1998, or never at all. The jury weighed the evidence and found that the claim accrued in 1998, and we agree with the court of appeals that legally sufficient evidence supports that finding.

## III. Damages

The jury awarded the landowners damages for the decrease in property value the nuisance caused. The Company challenges the evidence supporting those awards.

### A. The Property Owner Rule

If a nuisance is permanent, a landowner may recover the property's lost market value. *See Schneider Nat'l Carriers, Inc.*, 147 S.W.3d at 276; *Pickens v. Harrison*, 252 S.W.2d 575, 582 (Tex. 1952) (holding that "[i]f respondents' suit is one for permanent damages to the land, the measure of damages is the decreased value of the land"). This normally requires a comparison of market value with and without the nuisance. *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex. 1978), *disapproved on other grounds, Schneider Nat'l Carriers, Inc.*, 147 S.W.3d at 281; *Sherman Gas & Elec. Co. v. Belden*, 123 S.W. 119 (Tex. 1909).

A property owner may testify to the value of his property. We explained in *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984), that "[o]pinion testimony concerning [damages to land] is subject to the same requirements as any other opinion evidence, with one exception: the owner of the property can testify to its market value, even if he could not qualify to testify about the value of like

property belonging to someone else." We noted, however, that a property owner's testimony must be based on market, rather than intrinsic or some other speculative value of the property. *Id*. at 505. We stated that "[t]his requirement is usually met by asking the witness if he is familiar with the market value of his property." *Id*.

In *Porras*, Craig testified that Porras bulldozed Craig's land, decreasing the property's value by $20,000. Craig explained that the property was worth less to him because he had bought the land intending to build a retirement home on it, but he and his wife had become too fearful to do so. He stated that Porras intended to put exotic animals on his adjoining land, patrol the property with armed guards, and place signs warning that trespassers would be shot. Craig described a fire that started on Porras's property and rapidly spread to his own, and he explained that his disabled wife would have been unable to escape the fire had he not been there. *Id*. at 505.

We held that even though Craig was qualified to testify to his property's decreased market value, his testimony provided no evidence of that value. *Id*. Instead, Craig's testimony referred to personal, rather than market, value. Porras's failure to object to the testimony was immaterial, because "[i]rrelevant evidence, even when admitted without objection, will not support a judgment." *Id*.

So while the Property Owner Rule establishes that an owner is *qualified* to testify to property value, we insist that the testimony meet the "same requirements as any other opinion evidence." *Id.* at 504. Since *Porras*, we have further explained when expert testimony will support a judgment. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231–32 (Tex. 2004). We held that a qualified expert's bare conclusions—even if unchallenged at trial—would not support

9

a gross negligence finding. *Id*. at 233. We observed that "although expert opinion testimony often provides valuable evidence in a case, 'it is the *basis of the witness's opinion*, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.'" *Id*. at 232 (emphasis added) (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999)).[4] If an expert "br[ings] to court little more than his credentials and a subjective opinion," his testimony will not support a judgment. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997) (substitution in original). We later observed that an expert's testimony is conclusory as a matter of law if he "simply state[s] a conclusion without any explanation." *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008). And testimony is speculative if it is based on guesswork or conjecture.[5]

Although *Coastal* involved expert testimony, its holding is not necessarily limited to experts. *See Coastal*, 136 S.W.3d at 233 (holding that "bare conclusions—even if unobjected to—cannot constitute probative evidence"). We held that "[o]pinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable.'" *Id*. at 232 (quoting TEX. R. EVID. 401). *Coastal* relied in part on *Dallas Railway & Terminal Co. v. Gossett*, 294 S.W.2d 377, 380 (Tex. 1956), which held that "the naked

---

[4] *See also City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) ("Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence.").

[5] *See, e.g.*, BLACK'S LAW DICTIONARY 1529 (9th ed. 2009) (defining "speculation" as "[t]he act or practice of theorizing about matters over which there is no certain knowledge"); *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam) (noting that causation finding cannot be supported by "mere conjecture, guess, or speculation").

10

and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection." Gossett involved testimony by two drivers and an accident investigator that a street had been designated one-way. We determined that the witnesses' opinions provided no evidence that the street had been so designated, because they were "simply . . . conclusions," lacking probative effect. *Dall. Ry. & Terminal Co.*, 294 S.W.2d at 381.

We have also recognized that a business owner's conclusory or speculative testimony of lost profits will not support a judgment. *See, e.g., Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992) (holding that owner's testimony that he lost $200,200 in income was legally insufficient because it "d[id] not provide any indication of how [the owner] determined what [his] lost profits were"). Thus, we require "reasonably certain evidence of lost profits," which "must be based on objective facts, figures, or data." *Id*.

The Property Owner Rule falls under Texas Rule of Evidence 701, which allows a lay witness to provide opinion testimony if it is (a) rationally based on the witness's perception and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. TEX. R. EVID. 701; *see also Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852 (Tex. 2011). Based on the presumption that an owner is familiar with his property and its value, the Property Owner Rule is an exception to the requirement that a witness must otherwise establish his qualifications to express an opinion on land values.[6] Under the Rule, an

---

[6] *See Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 851–52 (Tex. 2011) (holding that "a witness who will be giving opinion evidence about a property's fair market value must be disclosed and designated as an expert pursuant to discovery and other applicable rules"); *see generally* JULIUS L. SACKMAN ET AL., 5

owner's valuation testimony fulfills the same role that expert testimony does.[7] *See, e.g., Harris Cnty. Appraisal Dist. v. Riverway Holdings, L.P.*, No. 14-09-00786-CV, 2011 Tex. App. LEXIS 1047, at *13 (Tex. App.—Houston [14th Dist.] Feb. 15, 2011, pet. denied) (observing that the Property Owner Rule "treats valuation testimony from a property owner as the functional equivalent of expert valuation testimony insofar as the owner's own property is concerned"); *cf.* FED. R. EVID. 702 advisory committee's note (holding that expert testimony rule includes "'skilled' witnesses, such as . . . landowners testifying to land values").[8]  Like expert testimony, landowner valuation testimony may be based on hearsay. *Burr's Ferry, B. & C. Ry. Co. v. Allen*, 164 S.W. 878, 880 (Tex. Civ. App.—Galveston 1914, writ ref'd).

Many federal courts recognize that, notwithstanding the Property Owner Rule, an owner's conclusory or speculative testimony will not support a judgment.  The United States Court of Appeals for the Fifth Circuit has held that although "[i]n general, 'an owner is competent to give his opinion on the value of his property' . . . such testimony cannot be based on naked conjecture or solely speculative factors." *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) (quoting *Kestenbaum*

NICHOLS ON EMINENT DOMAIN § 23.04 (3d ed. 2012) (discussing nonexpert witnesses qualified to testify to land values); 3 JAMES H. CHADBOURN, WIGMORE ON EVIDENCE § 714 (rev. ed. 1970) (same).

[7] We recently likened an attorney's testimony on the reasonableness of his fees to an owner's testimony about the value of his property, because both are based on personal knowledge rather than merely on expertise. *Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010). We held that even conclusory attorney's fee testimony was not objectionable, however, because "the opposing party, or that party's attorney, likewise has some knowledge of the time and effort involved and if the matter is truly in dispute, may effectively question the attorney regarding the reasonableness of his fee." *Id*. But that is not the case with testimony offered under the Property Owner Rule, where the adverse party is less likely to share a corresponding knowledge of the property's market value.

[8] *See also* 2 STEVEN GOODE ET AL., TEXAS PRACTICE SERIES, GUIDE TO THE TEXAS RULES OF EVIDENCE § 701.3, at 11–12 (3d ed. 2002) (noting that "[c]lassifying an opinion as either lay or expert has proved particularly troublesome when the opinion is rooted in 'other specialized knowledge,'" and observing that cases allowing owners to testify to the fair market value of their property "do not fit th[e lay witness opinion] mold as neatly").

12

*v. Falstaff Brewing Corp.*, 514 F.2d 690, 698–99 (5th Cir. 1975)).  If an owner's estimate is speculative, "the owner's testimony may be of such minimal probative force to warrant a judge's refusal even to submit the issue to the jury." *Kestenbaum*, 514 F.2d at 699.[9]  The Tenth Circuit has stated "the owner's qualification to testify does not change the 'market value' concept and permit him to substitute a 'value to me' standard for the accepted rule, or to establish a value based entirely upon speculation." *United States v. Sowards*, 370 F.2d 87, 92 (10th Cir. 1966).  Thus, "a landowner's testimony as to the value of his property is not always sufficient testimony on which a verdict can be based." *United States v. 10,031.98 Acres of Land*, 850 F.2d 634, 637 (10th Cir. 1988).  Instead, "[t]here must be a basis for the landowner's valuation, and when the landowner's own testimony shows that his valuation has no probative value, the district court may determine that the landowner's testimony alone is insufficient to support a jury verdict." *Id.*[10]

Several of our courts of appeals follow the same rule.  A landowner who testified that a flood reduced his property's value by $30,000, but conceded that he "pull[ed that figure] out of the air" provided no evidence of damages.  *Royce Homes, L.P. v. Humphrey*, 244 S.W.3d 570, 579–80 (Tex. App.—Beaumont 2008, pet. denied).  A homeowner's testimony that she lost $60,000 when forced to sell her home to pay creditors, was legally insufficient because she failed to explain how she arrived at that conclusion. *Lefton v. Griffith*, 136 S.W.3d 271, 277 (Tex. App.—San Antonio 2004,

---

[9] *Cf. Dietz v. Consol. Oil & Gas, Inc.*, 643 F.2d 1088, 1094 (5th Cir. 1981) (holding that district court properly admitted property owner's opinion testimony that was "based on more than naked conjecture").

[10] *See also Rich v. Eastman Kodak Co.*, 583 F.2d 435, 437 (8th Cir. 1978) (noting that "an owner may testify as to the value of his own property; however, there must be a basis for that valuation," and owner who failed to present factual basis for valuation failed to raise a fact issue on damages).

no pet.) (noting that court had "no way of knowing" the basis of the homeowner's estimate). A trailer-park owner's testimony that he would lose $10,800 in lost leases because of a condemnation was merely a "naked and unsupported . . . conclusion" and provided no evidence of diminished value. *City of Emory v. Lusk*, 278 S.W.3d 77, 88–89 (Tex. App.—Tyler 2009, no pet.) (holding that testimony was both speculative and conclusory). And an owner whose affidavit stated that his property had been damaged "between $1.8 and $2.2 million dollars based upon the reduction in value of the overall site" failed to provide evidence of damages because he did not state the basis for his opinion. *Trinity River Estates, L.P. v. DiFonzo*, No. 2-08-393-CV, 2009 Tex. App. LEXIS 4037, at *14–15 (Tex. App.—Fort Worth May 28, 2009, no pet.) (affirming no-evidence summary judgment); *cf. Stinson v. Cravens, Dargan & Co.*, 579 S.W.2d 298, 299 (Tex. Civ. App.—Dallas 1979, no writ) (holding boat owner's testimony of value was legally insufficient, because he failed to explain the basis for his opinion or the source of his repair estimate: "Where the owner affirmatively demonstrates . . . that his opinion is cast in terms of approximation and estimate unsupported by any relevant facts leading to or supporting such approximation or estimate the opinion testimony is too conjectural.").

The Company and the amici urge us to apply *Coastal*'s rule to the landowners' testimony here, and we agree that *Coastal* provides the appropriate standard for judging the adequacy of testimony offered under the Property Owner Rule. Because property owner testimony is the functional equivalent of expert testimony, it must be judged by the same standards. Thus, as with expert testimony, property valuations may not be based solely on a property owner's *ipse dixit*. An owner may not simply echo the phrase "market value" and state a number to substantiate his

14

diminished value claim; he must provide the factual basis on which his opinion rests. This burden is not onerous, particularly in light of the resources available today. Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support the claim. But the valuation must be substantiated; a naked assertion of "market value" is not enough. Of course, the owner's testimony may be challenged on cross-examination or refuted with independent evidence. But even if unchallenged, the testimony must support a verdict, and conclusory or speculative statements do not. *See Kestenbaum*, 514 F.2d at 699; *Coastal*, 136 S.W.3d at 233.

### B.     The Evidence

With this in mind, we turn to the landowners' testimony. The most detailed account came from Joe Donald Mashburn, a lifelong resident of Howland and a loan officer for Texas Heritage National Bank. Joe Donald and Judy Mashburn's property includes three houses on 104 acres. Joe Donald testified that his property's value had decreased due to the noise and odor:

Q.     Do you have an opinion as to how much it's decreased in value?

A.     Well, if I remember correctly in my deposition that I gave, I—I thought my property was worth $650,000. It's my home and two daughters' homes on 102 acres—104 acres, and I thought the market value of that property based upon sales of property around in the area, and I kind of keep up with that kind of stuff because of my job. And I said, well, I think it's diminished down to 250, maybe 250. So if you take the difference in 650 and 250, that's $400,000.

15

The Company did not cross-examine Joe Donald on this point, relying instead on its real estate appraiser, who testified that the property would be worth $235,000 if the compressor station was not there. This estimate, however, did not include two of the houses on the Mashburns' property, and the appraiser offered no opinion on diminution in value caused by the nuisance conditions. The jury awarded the Mashburns $200,000, half of what they estimated their damages to be.

At the other end of the spectrum was the evidence from William and Darlene Justiss. The Justisses own 1450 acres, 800 of which are affected by the noise and odor. Although William testified that the noise and odor decreased their property's value, he never referred to market value or explained the basis for his valuation:

Q.      And the noise and odors that you've noticed from the pump station from the time this lawsuit was filed or shortly before that, do you have an opinion whether or not it's decreased the value of your place there?

A.      Well, I'm sure it has.

Q.      What's your opinion as to the amount that it's decreased your acreage there?

A.      I don't know. It's a hard thing for me to say because I never ever thought in my mind that it was worth what the price of land is bringing now. And the only thing that sold out that way lately are the sites—

Q.      Well, let's just stick to—let's just stick to—

A.      I don't know. I don't know. I'm going to say probably across the whole acreage $1250.

Q.      Is that a decrease in value—

16

A. Decrease.

Q. —on the 800 acres? Is that a yes?

A. Yes.

On cross-examination, William admitted that he had not appraised the property in the two years before trial. Darlene deferred to William's opinion, testifying that he knew better about it than she did. The Company's appraiser offered no opinion on the Justiss's property. The jury awarded the Justisses $540,000.

The remaining landowners provided a figure when asked the market value of their property, but none gave any supporting factual basis. Joseph Justiss testified that his property had been in his family for 150 years and that it had "[p]robably more value [to him] than it would be worth to anybody." He then estimated that value: $2500–$2800 per acre without the station, and $1000–$1100 with it. On redirect, he stated, without elaboration, that those figures represented the fair market value of his property.

Tommy Alspaugh testified that the pump station's "actions" lowered the value of his property by 50%, or $1000 per acre. He did not state that he was referring to market value, offering only that their land would be considered "high dollar land" for Lamar County. His wife, Judy, however, testified that she agreed with Tommy's opinion on the diminution in value caused by increased noise and odor, and she answered "yes" when asked whether that valuation represented the market value of their property.

Joe Denton and Christine Mashburn own a house that sits on three acres and a separate forty-acre tract of land. Christine testified that without the compressor station their house and three acres

17

would be worth around $100,000. With the station, however, she did not think they could sell it for more than $20,000. As for the forty-acre tract, Christine testified that in the past she thought they could get $1000 an acre for the land but that because of the noise and odor she did not think they could get more than half of that now. She also testified that she and Joe Denton had sold some property about a mile north of the station for $600 an acre but could not remember exactly when the sale took place. Christine did not specify that she was referring to the market value of their property. Joe Denton largely agreed with Christine, and provided the following testimony:

Q. So you think it would be—the fair market value without the compressor station would be about [$]100,000?

A. I think so.

Q. And that's due—and then because of the compressor station being there with the noise and the odors, do you agree with the figures she gave of [$]25,000[11] being the best that y'all might could get?

A. I imagine that would be close to it.

This was the Mashburn's only reference to market value.

We conclude that none of this testimony provides evidence of diminished market value. Even taking into account "East Texas vernacular," as the court of appeals did,[12] William Justiss's testimony is speculative. He never stated his familiarity with market values, and his passing

---

[11] Christine Mashburn testified that the property was worth $20,000, not $25,000.

[12] ___ S.W.3d at ___.

reference to "what the price of land is bringing" is not enough. His testimony provides only his guess as to his property's diminution in value, and such speculation will not support a judgment.

Similarly, although a landowner need not use the phrase "market value" in describing his valuation, merely invoking that phrase does not make otherwise conclusory or speculative testimony legally sufficient. *Cf. Jelinek v. Casas*, 328 S.W.3d 526, 540 (Tex. 2010) ("While we have said that no 'magical words' need be used to meet the good-faith requirement, mere invocation of the phrase 'medical probability' is likewise no guarantee that the report will be found adequate."). Joseph Justiss, Tommy Alspaugh, and Joe Denton and Christine Mashburn merely answered "yes" when asked whether their numbers were based on market value, but they never explained how they arrived at those figures. Joseph Justiss testified only to what made the property valuable *to him*. *See Porras*, 675 S.W.2d at 505 (holding that there was no evidence of market value where owner's testimony affirmatively showed that it was based on personal value). Although Joe Denton and Christine Mashburn discussed a 2001 sale of nearby property, that reflects only their property's value after the nuisance, not how much the value had changed—a necessary element of permanent nuisance damages. We conclude that the landowners' bare conclusions provide no evidence of the damage caused by the nuisance. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (holding that "[b]are, baseless opinions will not support a judgment").

Joe Donald Mashburn provided the most detail, but even his testimony was insufficient. Although he demonstrated his familiarity with area market values, he failed to explain the factual basis behind his determination that his property suffered a $400,000 decrease in value. His statement that it was "based on property sales around in the area" provides little more detail than using the

19

words "market value." *Cf. Arkoma*, 249 S.W.3d at 389 (holding that expert's "cursory" testimony did not make his opinion conclusory, because accompanying exhibit explained the basis for his conclusion). In both cases, the owners stated a conclusion without explanation; the testimony is conclusory and no evidence.

Finally, the Company argues that the landowners' claims fail because several of the property owners complained about damages arising from the station's presence, rather than merely from the station's noise and odor. We disagree. The jury was correctly instructed to limit its nuisance finding to conditions arising from the station's operation, not merely its presence. Although the landowners' complaints sometimes referred to the station itself, there was also evidence that they objected to the noise and odor, and even though we have found no evidence of the amount of damages, a jury could have found that the landowners were harmed by the conditions emanating from the station.

## C. Disposition

We must decide whether rendition or remand is appropriate. Generally, when no evidence supports a judgment, we render judgment against the party with the burden of proof. *See, e.g., Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 912 (Tex. 2004). But we have remanded a case to the trial court when we have changed our precedent or when the applicable law has otherwise evolved between the time of trial and the disposition of the appeal. *See, e.g., Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 118 (Tex. 2011) (remanding because decision recognized, for the first time, a common law physical safety exception to the PIA); *Twyman v. Twyman*, 855 S.W.2d 619, 626 (Tex. 1993) (remanding in interest of justice because case was tried on legal theory overruled by Court); *Caller-Times Publ'g Co., Inc. v. Triad Commc'ns, Inc.*, 826

S.W.2d 576, 588 (Tex. 1992) (remand in interest of justice because Court announced new liability standard). In *Porras*, we stated that market value could be shown merely "by asking the witness if he is familiar with the market value of his property,"[13] and we have never before explained the interplay between *Porras* and *Coastal*. Because the landowners may have relied on *Porras* in presenting their evidence on their properties' diminution in value, we conclude that a remand is appropriate.[14] *See Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex. 1966) (noting that remand is appropriate where defendant requested jury issues based on precedent that was no longer controlling), *abrogated on other grounds by Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 517 (Tex. 1978).

## IV.	Conclusion

We reverse the court of appeals' judgment. Because liability is contested, we remand the case to the trial court for a new trial on liability and damages. TEX. R. APP. P. 60.2 (d), 61.2.

_____
Wallace B. Jefferson
Chief Justice

OPINION DELIVERED: December 14, 2012

---

[13] *Porras*, 675 S.W.2d at 505; *see also Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex. 1996) (applying *Porras* to conclude that owner's estimates provided some evidence of market value of personal property).

[14] In light of our disposition, we do not reach the Company's argument that the trial court's judgment improperly included prejudgment interest.