**Reversed and Rendered and Opinion filed May 28, 2015.**



**In The**

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

---

### NO. 14-14-00040-CV

---

**DZM, INC., Appellant**

**V.**

**RICHIE GARREN, Appellee**

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Cause No. 877,269**

---

# O P I N I O N

Appellee/plaintiff Richie Garren filed suit against appellant/defendant DZM, Inc. alleging that DZM converted property Garren had leased to one of DZM's tenants. Garren alleged that DZM converted the property by locking the tenant out of the leased premises and refusing to return the property Garren had leased to the tenant. At trial, Garren submitted receipts for some of the items and stated in a conclusory fashion that each item had a fair value market equivalent to its purchase price. The jury found liability and damages in favor of DZM on its conversion

claim. We reverse the trial court's judgment and render a judgment that Garren take nothing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

DZM entered into a lease with a tenant for retail space in a shopping mall. The tenant operated a social club on the leased premises. The tenant paid DZM rent from August 2005 through October 2005, but did not pay rent in November. When the tenant notified DZM that the tenant was filing for bankruptcy, DZM locked the tenant out of the property, and asserted a claim in the tenant's bankruptcy proceeding.

Garren asserts that he leased poker tables, chairs, poker supplies, electronics, decorations, and other items to the social-club owner for the sum of $1,000 per month and that DZM converted the property by locking the premises and refusing to return the property.[1] At trial, Garren submitted receipts for many of the items he alleged DZM converted. Garren testified that the property's fair market value at the time DZM was alleged to have converted the property equaled the purchase price of the items. Based on Garren's calculations, the fair market value of the items was $30,568.00. The jury determined that DZM had converted Garren's property and found $12,500 in damages.

On appeal, DZM asserts, among other things, legal and factual insufficiency of the evidence of the fair market value of the property at the time of the conversion. DZM asserts that the evidence is legally insufficient because the only evidence of the fair market value is Garren's testimony regarding the purchase price of the items.

---

[1] In addition to asserting a claim for the leased items, Garren also asserted a claim for sheetrock, which he did not lease to the tenant. Garren alleged that the tenant allowed Garren to store the sheetrock on the tenant's premises.

## II.    LEGAL INSUFFICIENCY OF THE EVIDENCE OF FAIR MARKET VALUE

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005).  We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony.  *See id.* at 819.

> Jury question four reads:
>
> What sum of money, if paid now in cash, would fairly and reasonably compensate Richie Garren for his damages, if any, proximately caused by the conversion of the property in question?  Consider the following elements of damages, if any, and none other: The fair market value of the property in question at the time of the conversion.

The jury charge defined "Fair Market Value" as "the price that the property in question would bring if it were offered for sale as of the date of the conversion, by a willing but not obligated seller and purchased by a willing but not obligated buyer."  The jury answered question four with a sum of $12,500.

Under its fifth issue, DZM asserts the evidence is legally insufficient to support a finding as to the fair market value of the property at the time of the alleged conversion.  At the charge conference, DZM stated that it was not objecting to the definition of "Fair Market Value" in the charge.  Though DZM did tender a requested damages question that the trial court rejected, this question was similar to the charge actually submitted regarding the need for proof of the market

3

value of the property at the time of the alleged conversion.[2] DZM does not assert that this court should review the sufficiency of the evidence in this regard under a standard different from that actually submitted in the jury charge. Under these circumstances, we measure the sufficiency of the evidence of damages against the charge given to the jury. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

The property-owner rule establishes that an owner is qualified to testify to the value of his property; nonetheless, the Supreme Court of Texas requires that such testimony meet the "same requirements as any other opinion evidence." *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012) (quoting *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)) (internal quotations omitted). The property-owner rule falls under Texas Rule of Evidence 701, which allows a lay witness to provide opinion testimony if it is (a) rationally based on the witness's perception and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. *See* Tex. R. Evid. 701; *Justiss*, 397 S.W.3d at 157. Based on the presumption that an owner is familiar with the owner's property and its value, the property-owner rule is an exception to the requirement that a witness must otherwise establish his qualifications to express an opinion on land values. *See Justiss*, 397 S.W.3d at 157. Under the rule, an owner's valuation testimony fulfills the same role as expert testimony. *See id*.

Because property-owner testimony is the functional equivalent of expert testimony, it must be judged by the same standards. *See id*. at 159. Thus, as with expert testimony, an owner's property valuation may not be based solely on the

---

[2] In the tendered question, the trial court would have asked the jury to find the reasonable cash market value of the property at the time of the alleged conversion, and "reasonable cash market value" was not defined in the tendered charge. The commonly understood meaning of "reasonable cash market value" is similar to the definition of "Fair Market Value" in the charge actually submitted. *See Lee v. Dykes*, 312 S.W.3d 191, 194–95 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

owner's *ipse dixit*. *See id*. An owner may not simply echo the phrase "fair market value" and state a number to substantiate the owner's claim; the property owner must provide the factual basis on which the opinion rests. *See id*. This burden is not onerous, particularly in light of the resources available today. *See id*. But, the valuation must be substantiated; a naked assertion of "fair market value" is not sufficient. *See id*. Even if unchallenged, the property owner's testimony must support the verdict, and conclusory or speculative statements do not. *See id*. In addition, under this court's precedent, evidence of the amount paid in the past to purchase property, by itself, is legally insufficient to support a finding as to the property's market value at a later date. *See Lee v. Dykes*, 312 S.W.3d 191, 195–99 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

At trial, Garren testified that the fair market value of the various items was equivalent to their purchase prices. Garren submitted a list he created of property he alleged DZM converted. Next to each item, Garren listed the property's fair market value as equivalent to its purchase price.[3] Garren testified that he knew the fair market value of the property from being around people in the casino business who gave him tips about where to buy the items. According to Garren, he had been dealing antiques and collectibles on the Internet since the advent of Internet auctioneering websites.[4] Garren also testified that he had "dealt" with auctions, but he did not elaborate on the type of auctions or how recently he had engaged in

---

[3] For most of the items on the list, Garren submitted a receipt. For these items, Garren opined that the fair market value was the purchase price of the property. For the items for which Garren lacked receipts, he testified that he provided an estimate of the value based on the value at the time of purchase.

[4] In spite of this testimony, when cross-examined about various televisions that he alleged DZM converted, Garren testified that his ex-wife owned one of the televisions, and she thought the fair market value of a television she owned was equivalent to the price she had paid to purchase the item brand new. Garren did not explain his ex-wife's qualifications, if any, for making that determination nor did Garren offer any evidence of the condition of the wife's television.

this activity. Garren did not provide any testimony that he had researched the prices for the used items he alleged were converted, nor did Garren offer any other evidence that he had attended auctions or researched prices recently.

Garren testified that most of the items DZM converted were originally purchased for use at a social club that Garren had intended to run. After that enterprise failed, Garren leased the items to DZM's tenant. Garren stated that a desk had never been opened, but the tenant had used most of the items for some period of time. Garren did not testify regarding the wear and tear on these items or offer other evidence regarding the condition of these items at the time of the alleged conversion. On cross-examination, Garren admitted that he was not familiar with the used-furniture market in Houston. When asked whether he understood the concept of fair market value, Garren replied that at one point he had received an offer to "buy all of the equipment that was actually higher than that before," but he did not further elaborate on this offer. We presume for the sake of argument that by this vague statement Garren intended to state that at some point he had received an offer from someone to purchase at least some of the property for prices greater than the purchase prices of whichever property items Garren considered equipment. Garren did not explain when the offer was made or otherwise indicate whether or not the offer was made before he leased the property, nor did Garren state which property items he considered to be equipment.

Garren submitted evidence of the past purchase price of various items of property and made conclusory statements that either a particular sum was the fair market value or that the purchase price was equal to the fair market value. Evidence of the past purchase price alone is legally insufficient to support a finding as to the property's market value at a later date. *See Lee*, 312 S.W.3d at 195–99. Although Garren stated that he knew individuals in the poker business and was

familiar with auctions and Internet auctioneering of collectibles, he did not explain the factual basis underlying his opinion. Garren's professional contacts and familiarity with auctions and Internet auctions may have helped him ascertain the fair market value of the property, but Garren did not explain how that knowledge influenced his valuations. While Garren testified that he was familiar with Internet auctions, for example, Garren did not state that he viewed similar collectible items on any Internet auctioneering website or that his research revealed that the items alleged to have been converted were selling at the price for which he purchased them. Furthermore, Garren did not explain how his familiarity with selling collectibles enabled him to determine that the fair market value for all of his used property (which ranged from collectibles to poker chips to computers and televisions to a security surveillance system) was equivalent to the purchase prices. To the contrary, some of the property at issue was used furniture and Garren specifically admitted that he was unfamiliar with the used-furniture business. Garren testified that most of the property had been used, but Garren did not explain the condition of the used property at the time of the alleged conversion. Garren's various conclusory statements are without any explanation of the factual basis on which they rest. Therefore, they are insufficient to substantiate Garren's valuation of the various items of property. Because Garren's statements constitute naked assertions of "fair market value" they are legally insufficient to support a finding of the property's fair market value. *See Justiss*, 397 S.W.3d at 155–61; *Smirl v. State*, No. 01-12-00989-CV, 2014 WL 2507639, at *4–6 (Tex. App.—Houston [1st Dist.] June 3, 2014, no pet.) (mem. op.).

Garren relies on *Burns v. Rochon*, to argue that the jury was required to accept his testimony regarding the fair market value of the property. *See* 190 S.W.3d 263 (Tex. App.—Houston [1st Dist.] 2006, no pet.). In *Burns*, the First

7

Court of Appeals quoted the Tenth Court of Civil Appeals for the proposition that "'it is well settled that the owner of property can testify as to his opinion regarding the value of his own property . . . even if the owner's testimony is halting and indefinite it nonetheless will be sufficient to sustain a verdict when there is no controverting evidence.'" *Id*. at 270–71 (quoting *Espinosa v. Schomberg*, 601 S.W.2d 161, 164 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.). The *Burns* court held that the property owner's testimony regarding the amounts the owner paid to purchase the property in question, in the absence of any other evidence regarding the fair market value or actual value of the property, was legally sufficient to support the trial court's damages finding based on the value of the property converted. *See id*. at 270–71. But, the Fourteenth Court of Appeals has respectfully disagreed with this part of *Burns*, concluding that it conflicts with authority from the Supreme Court of Texas that the purchase price alone is legally insufficient evidence to establish market value at a later date and concluding that the failure to object or to submit controverting evidence does not transform legally insufficient evidence into legally sufficient evidence. *See Lee*, 312 S.W.3d at 196–99. In addition, this part of *Burns* conflicts with the Supreme Court of Texas's subsequent opinion in the *Justiss* case. *See Justiss*, 397 S.W.3d at 156–59 (stating that a property owner's testimony under the property-owner rule is subject to the same requirements as other opinion evidence and that conclusory statements by a property owner are legally insufficient even if unchallenged).

Because there is no legally sufficient evidence that the property in question had any fair market value at the time of the alleged conversion, the proper course is to reverse and render a take-nothing judgment. *See Lee*, 312 S.W.3d at 199; *Smirl*, 2014 WL 2507639, at \*4–6. Accordingly, we sustain DZM's argument under its fifth issue in which DZM asserts that there is legally insufficient evidence of the

8

fair market value of the items at the time of the alleged conversion.[5]  *See Lee*, 312 S.W.3d at 199; *Smirl*, 2014 WL 2507639, at *4–6.  We reverse the judgment of the trial court and render judgment that Garren take nothing.  *See Lee*, 312 S.W.3d at 199; *Smirl*, 2014 WL 2507639, at *4–6.

### III.  CONCLUSION

The evidence is legally insufficient to support either the jury's damages finding or a finding of any damages under jury question four.  Therefore, we reverse the judgment of the trial court and render a take-nothing judgment against Garren.


/s/          Kem Thompson Frost
             Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.

---

[5] Because we determine that the evidence is legally insufficient, we need not address whether the evidence is factually sufficient.  *See Lee*, 312 S.W.3d at 199.  Similarly, because we sustain DZM's argument that the evidence is legally insufficient and render a take-nothing judgment against DZM, we need not address DZM's remaining issues.

9