

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| STEVE JUEN and CSDT AMERICA, INC., | § | No. 08-18-00181-CV |
| | § | Appeal from the |
| Appellants, | | |
| | § | County Court at Law No. 3 |
| v. | | |
| | § | of El Paso County, Texas |
| NOE RODRIGUEZ, | | |
| | § | (TC# 2016DCV2973) |
| Appellee. | | |

**O P I N I O N**

Steve Juen ("Juen") and CSDT America, Inc. ("CSDT") (collectively, "Appellants") appeal from a final summary judgment in favor of Noe Rodriguez ("Rodriguez") on his claims against Juen and CSDT for fraud, and his claim against CSDT for breach of contract. We reverse and remand.

**BACKGROUND**

CSDT contracted with Rodriguez for the purchase of Rodriguez's single-family residence. The purchase price was $759,000, to be paid in cash at closing. The contract did not provide for financing of any portion of the contract price. The sale was scheduled to close on November 30,

2015, but that date was later extended to December 21, 2015. CSDT also obtained an unrestricted right to terminate the contract on or before December 11, 2015. Even still, CSDT did not exercise its option to terminate the contract and failed to close the sale on December 21, 2015. Juen, who was the CEO and President of CSDT, later made two attempts to pay Rodriguez not in cash but by means of purported instruments drawn on what Rodriguez contends are fictitious institutions.

Rodriguez ultimately filed suit against Juen and CSDT. Against both Juen and CSDT, Rodriguez asserted claims for common law fraud (including fraudulent inducement) and statutory fraud. And, as against only CSDT, Rodriguez asserted a claim for breach of contract. Responding, Appellants filed a general denial, affirmative defenses, and asserted counterclaims for fraud and breach of contract.

Rodriguez thereafter filed a traditional motion for summary judgment on each of his claims. Appellants filed a response and an amended response, and Rodriguez filed objections and amended objections to Appellants' summary judgment evidence. No ruling on those objections appears in the record. On January 22, 2018, the trial court granted Rodriguez's summary judgment motion on his claims of breach of contract and fraud, and ordered that he recover from Appellants, jointly and severally, damages in the amount of $317,000, and attorney's fees in the amount of $3,750.

CSDT and Juen appealed, but we dismissed the appeal as prematurely filed given that Appellants' counterclaims remained pending. Thereafter, on September 11, 2018, Appellants nonsuited their counterclaims. The following day, however, the trial court signed a final summary judgment which granted a take-nothing summary judgment in favor of Rodriguez on the counterclaims, and incorporated the same relief as its previous order on the summary judgment

granted on Rodriguez's own claims. CSDT and Juen both appeal from that judgment.

## DISCUSSION

On appeal, Appellants raise four issues challenging the trial court's summary judgment ruling. By these issues, Appellants assert that the summary judgment evidence does not establish (1) liability for fraudulent inducement, (2) damages based on the property's fair market value, (3) recoverability of consequential damages, and (4) Juen's individual liability. Even though these four issues are framed in terms of legal or factual insufficiency of the evidence to support the trial court's ruling, we apply the summary judgment standard, which is more fully described below, and review the evidence to determine whether Rodriguez established there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c).

### A. Standard of Review

The granting of a summary judgment is reviewed *de novo*. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for a traditional summary judgment must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84; *Provident Life*, 128 S.W.3d at 215–16. If the movant sustains this burden, the nonmovant must present evidence raising a genuine issue of material fact to preclude summary judgment. *Lujan*, 555 S.W.3d at 84; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The reviewing court must credit evidence favoring the nonmovant, "indulging every reasonable inference and resolving all doubts in his or her favor." *Lujan*, 555 S.W.3d at 84; *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

### B. Effect of error relating to damages

Because of the effect of error related to damages, we begin our review by addressing Appellants' second and third issues which challenge aspects of the trial court's award of damages as a matter of law. "While a trial court may grant summary judgment on liability, but submit any issue relating to damages to a jury for trial, an appellate court may not render such a judgment upon a finding of error. If liability is contested, an appellate court may not remand and order a trial solely on unliquidated damages; the whole action must be remanded for further proceedings." *Arthur v. Uvalde Cty. Appraisal Dist.*, No. 04-14-00533-CV, 2015 WL 2405343, at \*10 (Tex. App.—San Antonio May 20, 2015, pet. denied) (mem. op.) (citing TEX. R. APP. P. 44.1(b); TEX. R. CIV. P. 166a(a)). Because of this principle, it is expedient to first consider whether the trial court erred by granting summary judgment awarding unliquidated damages. If it did so, we need not determine whether it also erred by granting summary judgment on liability because, in any event, we would be constrained to remand the entire cause for further proceedings. *See id.*; *see also Profitlive P'ship v. Surber*, 248 S.W.3d 259, 262 (Tex. App.—Fort Worth 2007, no pet.) (reversing entire summary judgment based on failure to establish damages as matter of law). We begin our analysis, then, with a discussion of the summary judgment damage award rather than its imposition of liability.

## C. The award of damages

The final summary judgment awards Rodriguez unliquidated damages in the amount of $317,000. That figure was derived from Rodriguez's assertions that the difference between the contract price and the fair market value of the subject property was $259,000, and that, because the sale to Appellants did not close, he was required to pay his ex-wife an additional $58,000 under a pre-existing agreement.

4

### 1) Fair market value

The measure of damages for breach of a contract for the sale or purchase of real estate is the difference between the contract price and the property's market value at the time of the breach. *Barry v. Jackson*, 309 S.W.3d 135, 140 (Tex. App.—Austin 2010, no pet.); *see Goldman v. Olmstead*, 414 S.W.3d 346, 362 (Tex. App.—Dallas 2013, pet. denied). The issue here is whether Rodriguez, as summary judgment movant, established the market value of the property as a matter of law.

Rodriguez states in his summary judgment affidavit:

> I have been unable to sell the Property, though the Property has been in the market for over two years. The highest offer I have received to this date is $500,000.00. Based on market conditions, and the multiple discussions that I have had with my realtors, I believe the current fair market value of the Property at this time is approximately $500,000.00.

Rodriguez contends that this testimony is sufficient to establish the market value of the property because a property owner "can testify to its market value, even if he could not qualify to testify about the value of like property belonging to someone else." *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012) (quoting *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)). But *Justiss* goes on to explain that, "while the Property Owner Rule establishes that an owner is *qualified* to testify to property value, we insist that the testimony meet the same requirements as any other opinion evidence." *Id.* at 156 (internal quotation marks omitted). One of those requirements is that the testimony not be conclusory. *See id.* And testimony that merely states a conclusion without any explanation is conclusory as a matter of law. *Id.*; *see Bustamante v. Ponte*, 529 S.W.3d 447, 462 (Tex. 2017) (explaining that testimony stating a conclusion without an explanation or factual substantiation is conclusory); *Rogers v. Zanetti*, 518 S.W.3d 394, 405

(Tex. 2017) (Explaining that an expert's opinion must have a "demonstrable and reasoned basis," which generally comes in the form of an answer to the question "Why: Why did the expert reach that particular opinion?").

Importantly, the Texas Supreme Court offered guidance on the probative value of a property owner's testimony concerning market value:

> [P]roperty valuations may not be based solely on a property owner's *ipse dixit*. An owner may not simply echo the phrase "market value" and state a number to substantiate his diminished value claim; he must provide the factual basis on which his opinion rests. This burden is not onerous, particularly in light of the resources available today. Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support the claim. But the valuation must be substantiated; a naked assertion of "market value" is not enough. Of course, the owner's testimony may be challenged on cross-examination or refuted with independent evidence. But even if unchallenged, the testimony must support a verdict, and conclusory or speculative statements do not.

*Justiss*, 397 S.W.3d at 159.

Here, we conclude that Rodriguez's opinion of the market value of the property is conclusory because it lacks explanation or factual substantiation. *See Bustamante*, 529 S.W.3d at 462; *Justiss*, 397 S.W.3d at 156; *but cf. Miller v. Argumaniz*, 479 S.W.3d 306, 312–13 (Tex. App.—El Paso 2015, pet. denied) (holding that a four-year-old appraisal sufficed to provide a factual basis for the valuation testimony pursuant to Rule 701 and the property owner rule); *Long Island Village Owners Ass'n v. Berry*, No. 13-14-00363-CV, 2016 WL 1072856, at *15 (Tex. App.—Corpus Christi–Edinburg Mar. 17, 2016, pet. denied) (mem. op.) (approving property owner valuation supported by the original purchase price and the most recent tax statement); *RWH Homebuilders, LP v. Black Diamond Dev. LLP*, No. 14-13-00948-CV, 2015 WL 5025520, at *9–10 (Tex. App.—Houston [14th Dist.] Aug. 25, 2015, no pet.) (mem. op.) (approving property owner valuation supported by the price originally paid for home lots, property owner's general

familiarity with the subdivision and his statement that the lots were selling very well, and a summary of appraisal information). Rodriguez states that the highest offer he has received on the property is $500,000, but he fails to provide any explanation or factual substantiation of that offer. He refers to "market conditions," without identifying what those conditions are, and "multiple discussions" with his realtors, without divulging the content of those discussions or the identity or qualifications of his realtors. He then simply concludes that the fair market value of the property is approximately $500,000, without any explanation of how that conclusion is supported by the "market conditions" and "multiple discussions" on which he supposedly relied.

The only seemingly concrete basis for Rodriguez's valuation is the reference to a $500,000 offer, which he claims is the highest offer received. But "Texas courts have long held that unaccepted offers to purchase property are no evidence of market value of property." *Lee v. Lee*, 47 S.W.3d 767, 785 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Hanks v. Gulf, Colorado & Santa Fe Ry. Co.*, 159 Tex. 311, 320 S.W.2d 333, 336–37 (1959)); *see Mieth v. Ranchquest, Inc.*, 177 S.W.3d 296, 307 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Despite the array of methods Rodriguez could have used to substantiate a valuation from a non-exhaustive list, his opinion of the market value of the property is speculative and unsupported by any demonstrable factual basis.

Rodriguez nevertheless argues that his testimony is sufficient because Appellants did not object to it. But conclusory opinion testimony constitutes no evidence, regardless of whether it is challenged. *See Bustamante*, 529 S.W.3d at 462; *Justiss*, 397 S.W.3d at 159. Rodriguez's affidavit cannot be considered probative evidence and, consequently, does not establish market value as a matter of law. *See Bustamante*, 529 S.W.3d at 462. There being no other evidence of the property's

market value, we conclude that the trial court erred by granting summary judgment awarding damages based on a market value of $500,000.

Issue Two is sustained.

### 2) Consequential damages

By Issue Three, Appellants next contend that the trial court erred by awarding consequential damages in the amount of $58,000. Consequential damages must be foreseeable and "directly traceable to the wrongful act and result from it." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997). Appellants argue that the consequential damages awarded in this case, at best, merely relate "to an unconnected and ill-defined agreement."

The following excerpt from Rodriguez's affidavit is the entirety of the evidence underlying the assessment of consequential damages:

> Mr. Juen knew that I needed to sell the house to comply with a previous agreement with my ex-wife, as we discussed several times that this was the reason I was selling the Property. Because Mr. Juen failed to comply with the Contract, I could not comply with the agreement with my ex-wife. I have had to request two extensions of that agreement, which will result in me having to pay my ex-wife an additional $58,000.00 from what I had previously agreed to pay her.

Appellants argue that this testimony cannot support the summary judgment award because it provides no explanation of the subject matter or terms of the agreement, or how breach of the sales contract caused any loss under that agreement. We agree. Rodriguez's opinion that his alleged consequential damages were caused by the breach of the sales contract lacks any explanation or factual substantiation. *See Bustamante*, 529 S.W.3d at 462; *Justiss*, 397 S.W.3d at 156. Nothing establishes that the alleged damages are directly traceable to Appellants' conduct and resulted from that conduct. *See Arthur Andersen*, 945 S.W.2d at 816. Rodriguez merely states that it is so.

Rodriguez's affidavit is conclusory as a matter of law and, therefore, constitutes no

8

evidence of consequential damages. *See Bustamante*, 529 S.W.3d at 462; *Justiss*, 397 S.W.3d at 156. There being no other evidence of consequential damages, we conclude that the trial court erred by granting summary judgment awarding such damages.

Issue Three is sustained.

### D. Prohibition against partial remand

The Texas Rules of Appellate Procedure prohibit an appellate court from remanding a cause for a new trial solely on the issue of unliquidated damages if liability is contested. TEX. R. APP. P. 44.1. This rule applies regardless of whether error is found in granting summary judgment on the issue of liability. *See Clear Lake Ctr., L.P. v. Garden Ridge, L.P*., 416 S.W.3d 527, 545 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Appellants have demonstrated that the trial court erred by granting summary judgment on damages because Rodriguez did not establish his damages as a matter of law. Those damages are unliquidated, while at the same time Appellants in this instance have contested their liability.[1] Thus, regardless of whether we were to sustain or overrule Appellants' challenges to the summary judgment on liability, the entire judgment must be reversed and the cause remanded for a new trial on both liability and damages. *See Arthur*, 2015 WL 2405343, at *10; *Profitlive P'ship*, 248 S.W.3d at 262. For this reason, we need not address the merits of Appellants' remaining issues

---

[1] We note it is of no consequence here that CSDT did not raise any issue on appeal challenging the trial court's determination on summary judgment that it is liable for breach of contract. As stated by the Texas Supreme Court: "If a party files a general denial in the trial court, that pleading puts a plaintiff to his or her proof on all issues, including liability; its effect extends to contesting liability in the event of remand on appeal. . . . A party's failure to present on appeal an additional discrete challenge to liability when that party challenges damages does not defeat the plain language of rule 44.1(b) proscribing a separate trial on unliquidated damages when liability is contested." *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001); *see JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 165 n.8 (Tex. 2015). Here, CSDT filed a general denial and also contested its liability for breach of contract in its response to Rodriguez's summary judgment motion. Thus, we must remand both liability and damages relating to the breach of contract claim against CSDT. *See JLG Trucking*, 466 S.W.3d 165 n.8; *Estrada*, 44 S.W.3d at 562.

addressing matters of liability.

## CONCLUSION

The trial court erred by granting summary judgment because Rodriguez failed to establish his damages as a matter of law. Pursuant to appellate procedure rule 44.1, we reverse the final summary judgment and remand this cause for further proceedings.


GINA M. PALAFOX, Justice

December 14, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.