**Reverse and Remand; Opinion Filed December 8, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01258-CV

### RENATE NIXDORF GMBH & CO. KG AND WATERCREST PARTNERS, L.P., Appellants
### V.
### MIDLAND INVESTORS, LLC, Appellee

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-10153-J**

## MEMORANDUM OPINION

Before Justices Francis, Myers, and Stoddart
Opinion by Justice Myers

Renate Nixdorf GMBG & Co. KG and Watercrest Partners, L.P. appeal the trial court's

judgment that they take nothing on their claims against Midland Investors, LLC. Appellants

bring two issues on appeal contending the trial court erred by (1) granting appellee's motion for

summary judgment and (2) severing appellants' claims against appellee from the underlying

litigation. We reverse the trial court's judgment.

## BACKGROUND

W. Eric Brauss and Christine Brauss Martin owned an interest in TRA Midland Properties, LLC ("TRA").[1] According to appellants, TRA's primary assets were twenty-one apartment complexes. On November 10, 2009, Brauss and Martin transferred their interest in TRA to Midland Residential Investment, LLC ("MRI") (the "2009 transaction") for no compensation. Brauss and Martin then moved to Brazil. On December 10, 2010, appellants and many other individuals and entities, all of whom had been investors in Brauss and Martin real estate schemes, obtained a judgment against Brauss and Martin for over $43 million. *See generally Brauss v. Triple M Holding GMBH*, 411 S.W.3d 614 (Tex. App.—Dallas 2013, pet. denied) (affirming trial court's judgment).

In 2012, MRI was interested in selling TRA's apartment complexes. Appellee's parent, Pivotal Finance, looked into purchasing the complexes. Pivotal and TRA reached an agreement for the purchase and sale of the complexes for $170 million, with Pivotal assuming a $130 million loan and paying $40 million cash at the closing. Pivotal created appellee to hold the properties. At the closing, with the title company acting as escrow agent for the closing, appellee paid $40 million. Appellants alleged the $40 million from appellee was transferred at the closing to Pillar Income Asset Management, Inc. and not to TRA.[2]

In 2013, appellants brought suit against appellee as well as TRA, Pillar, and MRI asserting claims under the Texas Uniform Fraudulent Transfer Act. Appellee moved for summary judgment on all of appellants' claims against it, and the trial court granted the motion

---

[1] Brauss and Martin's ownership interest in TRA was indirect. TRA was 100 percent owned by TRA Apt West TX, L.P. and was managed by Brauss and Sue Shelton. TRA Apt West TX, L.P.'s general partner was TRA Apt GP, Inc.; Brauss owned 100 percent of the shares of TRA Apt GP, Inc. until he transferred them to MRI on November 10, 2009.

[2] Pillar explained in its answer to an interrogatory from Nixdorf why it received the $40 million cash from the sale: "Pillar is an asset manager for the entities that owned TRA Midland as of the closing date of the sale of the Apartment Complexes. Part of those services included cash management. Pillar regularly handles funds for the companies it manages."

for summary judgment. Appellee then moved to have appellants' claims against it severed from the claims against the other defendants, which the court granted.

## SUMMARY JUDGMENT

The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See id.* When analyzing a no-evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (quoting *City of Keller*, 168 S.W.3d at 824). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

"More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

## UNIFORM FRAUDULENT TRANSFER ACT

The Texas Uniform Fraudulent Transfer Act provides that if a debtor transfers assets in a manner that defrauds the rights of its creditors, the trial court may set aside the transfer or take other actions to protect the creditors. *See* TEX. BUS. & COM. CODE ANN. §§ 24.001–.013 (West 2015).

Section 24.005(a) provides that a transfer by a debtor is fraudulent as to a creditor if the debtor made the transfer

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

*Id.* § 24.005(a)(1), (2).

Section 24.006(a) provides that if a creditor's claim against a debtor arose before the debtor made a transfer of assets, the transfer is fraudulent if the debtor did not receive "a reasonably equivalent value in exchange for the transfer" and the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. *Id.* § 24.006(a).

–4–

If a creditor proves a fraudulent transfer, the creditor may obtain (1) avoidance of the transfer; (2) an attachment against the asset; (3) an injunction against the debtor, a transferee, or both prohibiting further disposition of the asset or other property; (4) the appointment of a receiver to take charge of the asset or other property of the transferee; (5) a judgment against a transferee of the asset for the value of the asset transferred; or (6) "any other relief the circumstances may require." *Id.* §§ 24.008, .009(b).

The act provides two affirmative defenses for transferees of an asset that was part of a fraudulent transfer. A transferee has an affirmative defense to a claim seeking avoidance of a fraudulent transfer under section 24.005(a)(1) if the transferee proves it took the asset "in good faith and for a reasonably equivalent value." *Id.* § 24.009(a). A transferee has an affirmative defense to a claim seeking a judgment under section 24.009(b) if the transferee proves it took the asset in "good faith" and "for value." *Id.* § 24.009(b)(2).

## APPELLANTS' CAUSES OF ACTION

Appellants pleaded three causes of action. Their first cause of action alleged two fraudulent transfers under section 24.005(a)(1). They first alleged the 2009 transaction (Brauss and Martin's transfer of TRA to MRI) was a fraudulent transfer because it was made "with actual intent to delay, hinder or defraud Plaintiffs, which had claims against Brauss and Martin . . . ." Appellants then alleged that in the 2012 transaction (TRA's sale of the apartment complexes to appellee), "Defendants diverted over $40 million in sale proceeds from the Midland Investors transaction to Pillar in order to delay, hinder and defraud Plaintiffs, who could have partially satisfied their judgments out of those proceeds."

Appellants' second and third causes of action alleged the 2009 transaction was a fraudulent transfer under sections 24.005(a)(2) and 24.006(a). Appellants did not allege in these causes of action that the 2012 transaction was a fraudulent transfer under those statutes.

–5–

In each of the causes of action, appellants sought all of the remedies provided by sections 24.008 and 24.009(b), including a "judgment for the value of the asset transferred . . . ."

Appellee alleged as an affirmative defense "that it is and was a good faith purchaser for reasonably equivalent value when it purchased apartment complex properties from TRA Midland Properties, LLC in 2012. Pursuant to TEX. BUS. & COM. CODE § 24.009, the transaction is not voidable." Appellee also alleged that appellants' damages were caused by other parties over whom appellee had no control or influence.

## SUMMARY JUDGMENT GROUNDS

In their first issue, appellants contend the trial court erred by granting appellee's motion for summary judgment.

### Standing

Appellee asserted in its supplemental motion for summary judgment that appellants failed to show they were creditors of TRA to have standing to raise a claim of fraudulent transfer concerning the 2012 transaction. Standing is a component of a court's subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). Because the question of standing is a legal question concerning jurisdiction, an appellate court reviews de novo a trial court's ruling on standing. *Heckman v. Williamson County*, 369 S.W.3d 137, 149–50 (Tex. 2012). When determining whether a party has standing, we construe the petition in favor of that party, and we review the record to determine whether any evidence supports standing. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

To bring a cause of action for fraudulent transfer, a plaintiff must show it is a "creditor" with a "claim" against a "debtor." TEX. BUS. & COM. CODE ANN. § 24.002(4); *see id.* §§ 24.008, 24.009(b). The act defines "claim" as meaning "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 24.002(3). "'Creditor' means a person . . . who has a claim." *Id.* § 24.002(4). "'Debtor' means a person who is liable on a claim." *Id.* § 24.002(6).

In their first cause of action, appellants alleged the 2012 transaction was a fraudulent transfer under section 24.005(a)(1). To have standing under that statute, the plaintiff-creditor must have a claim against the debtor making the transfer before or within a reasonable time after the transfer. *Id.* Appellee argues appellants lack standing to assert the 2012 transaction was a fraudulent transfer because appellants are not creditors of TRA. Specifically appellee argues appellants did not have a claim against TRA before or within a reasonable time after the 2012 transaction. *See id.* We disagree.

Appellants have a claim against TRA, namely, their causes of action against TRA for violating the Texas Uniform Fraudulent Transfer Act in the 2009 transaction. That claim arose at the time of the 2009 transaction, three years before the 2012 transaction. The fact that the claim has not been reduced to judgment, is disputed, and is contingent on appellants prevailing in this lawsuit does not prevent appellants from having a claim under the Texas Uniform Fraudulent Transfer Act. *See id.* § 24.002(3).

We conclude appellants had standing to bring their suit under the Texas Uniform Fraudulent Transfer Act against appellee asserting the 2012 transaction was a fraudulent transfer under section 24.005(a)(1). This ground does not support the summary judgment.

### Good Faith

Appellee's motion for summary judgment asserted there was no evidence that appellee was not a good-faith purchaser. A no-evidence motion for summary judgment is proper only when there is no evidence to support an essential element on which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i). Good faith is an affirmative defense to a

fraudulent transfer claim, and the party asserting good faith bears the burden of proving it. *Hahn v. Love*, 394 S.W.3d 14, 30 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see* TEX. BUS. & COM. CODE ANN. § 24.009(a). Here, appellee had the burden of proving good faith; therefore, appellants' failure to present evidence was not a proper ground for a no-evidence summary judgment. See *Forney 921 Lot Dev Partners I, L.P. v. Paul*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied) (party may not file a no-evidence summary judgment motion on affirmative defense because he would have burden to prove affirmative defense at trial). Accordingly, this ground does not support summary judgment.

### Reasonably Equivalent Value as an Element of Appellants' Causes of Action

With respect to appellants' second cause of action, under section 24.005(a)(2), appellants had the burden of proving that reasonably equivalent value was not received for the transferred asset. Appellee asserted in its motion for summary judgment, "There is no dispute that Midland Investors paid reasonably equivalent value for the apartment complexes . . . ." Because of the context in which appellee made the assertion, we conclude appellee has presented a summary judgment ground that appellants have no evidence appellee did not pay reasonably equivalent value for the apartment complexes.[3]

---

[3] The no-evidence portion of appellee's motion for summary judgment was under the main heading of "There is no evidence supporting Plaintiffs' fraudulent transfer claims against Midland Investors." Under this main heading were three subheadings with argument. The first subheading was, "(1) A claim of fraudulent transfer requires proof of the defendant's fraudulent intent or proof that the transfer was made for less than reasonably equivalent value." The discussion under this heading set out the elements for claims under section 24.005(a)(1) and (2). The second subheading stated, "(2) There is no evidence that Midland Investors was not a good faith purchaser." The discussion under this heading asserted appellants presented no evidence that appellee was not a good-faith purchaser of the apartment complexes. As discussed above, this was not an appropriate ground for a no-evidence summary judgment because appellee had the burden of proof on the element of good faith. The third subheading was, "(3) It is undisputed that the sale was for reasonably equivalent value." Appellee argued under this heading it was undisputed that it paid reasonably equivalent value, and therefore it was undisputed that appellee purchased the apartment complexes for reasonably equivalent value. "As such, there can be no fraudulent transfer claim against Midland Investors." A factual assertion is undisputed only if there is no evidence contrary to the assertion. Because the assertion that reasonably equivalent value was undisputed was under the main heading that there was "no evidence supporting Plaintiff's fraudulent transfer claims," we conclude appellee's assertion it was undisputed appellee paid reasonable equivalent value for the apartment complexes constituted an assertion that there was no evidence that appellee did not pay reasonably equivalent value for the apartment complexes.

Lack of reasonably equivalent value is not an element of appellants' first claim under section 24.005(a)(1), so this ground does not support summary judgment on appellants' claims under section 24.005(a)(1).

In contrast, lack of reasonably equivalent value is an element of appellants' second and third claims under sections 24.005(a)(2) and 24.006(a). However, the transfer appellants alleged as fraudulent under these sections was Brauss and Martin's transfer of TRA to MRI in 2009. Appellants did not allege that the 2012 transaction (the sale of the apartment complexes to appellee) was fraudulent under section 24.005(a)(2) or 24.006(a). Appellee's motion for summary judgment asserts, "There is no dispute [i.e., no evidence to the contrary] that Midland Investors paid reasonably equivalent value for the apartment complexes . . . ." Appellee's motion for summary judgment does not assert there was no evidence that the 2009 transaction was not for reasonably equivalent value. We conclude appellee's ground that there was no evidence it did not pay reasonably equivalent value for the apartment complexes does not support summary judgment on appellants' causes of action.

### Reasonably Equivalent Value as an Element of Appellee's Affirmative Defense

Appellee also moved for summary judgment under rule 166a(c) on the ground it established as a matter of law that it was a good faith purchaser for reasonably equivalent value.[4] Being a good faith purchaser of an asset for reasonably equivalent value is an affirmative defense to a cause of action to void a transfer under section 24.005(a)(1). *See* TEX. R. APP. P. 166a(c); TEX. BUS. & COM. CODE ANN. § 24.009(a). Appellee relies on the affidavits of two of its witnesses, David Garner (vice president and treasurer of Pivotal) and Francis Najafi (president of

---

[4] The heading of this section is "Midland Investors is also entitled to traditional summary judgment because it was a good faith purchaser for value." Being a good-faith purchaser "for value" is an affirmative defense to a claim for judgment under section 24.009(b) against a transferee of the asset. Being a good-faith purchaser "for a reasonably equivalent value" is an affirmative defense to a claim for fraudulent transfer under section 24.009(a). Appellee's argument under this heading makes clear it is asserting the affirmative defense under section 24.009(a) for "a person who took in good faith and for a reasonably equivalent value," and not the affirmative defense for "a good faith transferee who took for value . . . ."

Pivotal). Garner stated in his affidavit that the price for the apartment complexes set out in the purchase-and-sale agreement, $175 million,[5] "was viewed by Midland Investors as a fair market value at the time." Najafi stated in his affidavit, "The purchase price in the Midland Transaction was $170 million for the real property portfolio. This was a negotiated price that Midland Investors believed was a fair market price." Appellants assert this testimony was not sufficient to establish as a matter of law that $170 million was a reasonably equivalent value for the apartment complexes.

"Reasonably equivalent value" is not limited to fair market value but "includes without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COM. CODE ANN. § 24.004(d); *In re 1701 Commerce, LLC*, 511 B.R. 812, 840 (Bankr. N.D. Tex. 2014).

Appellee asserts Garner's and Najafi's testimony was sufficient to prove the value of the apartment complexes because they are officers of the company that owns them. Generally, property owners are qualified to testify to the value of their property even if they would not be qualified to testify to the value of other property. *Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852–53 (Tex. 2011). When the property owner is a business entity, its employees may testify to the property's value if their positions and duties warrant a presumption that the employees are familiar with the property and its value.[6] *Id.* at 853.

---

[5] The closing statement for the 2012 transaction showed that the purchase price was $170 million. The parties do not explain why the price for the apartments dropped $5 million between the signing of the purchase-and-sale agreement on August 24, 2011, and the closing of the sale on February 17, 2012.

[6] Garner and Najafi were not appellee's officers or employees. They testified they were officers of Pivotal Group, Inc., which was the manager of Pivotal Midland, LLC, which was the manager of Pivotal BP Investors, LLC, which wholly owned appellee. Appellants did not object in the trial court or argue on appeal that Garner and Najafi were not qualified to testify under the property-owner rule. Therefore, we do not address whether the fact they were not officers of the company that owned the property left them unqualified to testify to the apartment complexes' value under the property-owner rule. *See Reid Road*, 337 S.W.3d at 855 (officer of property owner's general partner was not qualified to testify to value of partnership's property under the property-owner rule because the general partner was not the owner of the partnership's property).

This property-owner rule falls under rule of evidence 701, "which allows a lay witness to provide opinion testimony if it is (a) rationally based on the witness's perception and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 157 (Tex. 2012) (citing TEX. R. EVID. 701). The property-owning witness may not simply state a number and declare it to be the property's value; the owner "must provide the factual basis on which his opinion rests." *Id.* at 159. Opinion testimony without the factual basis is conclusory and will not support a judgment. *Id.* at 156, 159.

Garner and Najafi provided no basis for their testimony that $175 million was "a fair market value" or that $170 million was "a fair market price." Their testimony concerning value is conclusory and will not support a judgment.

We conclude the trial court erred by granting appellee's motion for summary judgment.[7] We sustain appellants' first issue.

## SEVERANCE ORDER

In their second issue, appellants contend the trial court abused its discretion by granting appellee's motion to sever appellants' causes of action against appellee from the remainder of the case. Rule 41 of the rules of civil procedure provides, "Any claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. "The controlling reasons for a severance are to do justice, avoid prejudice and further convenience." *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). "If summary judgment in favor of one defendant is proper in a case with multiple defendants, severance of that claim is proper so it

---

[7] Appellee asserts in its brief on appeal that the Rule 11 agreement between it and appellants bars appellants' claims. *See* TEX. R. CIV. P. 11. In that agreement, appellants stated they would not seek to void the 2012 transaction, "to otherwise impede Midland Investors' ability to market, sell, dispose of and/or provide clear title to the real property it acquired in the 2012 Transaction," or to recover the proceeds from a pending sale of the properties by appellee. Appellee mentioned the Rule 11 agreement in the "Facts" section of its motion for summary judgment, but the Rule 11 agreement's effect on appellants' suit was not expressly presented as a ground for summary judgment. Accordingly, we cannot affirm the summary judgment on the basis of the Rule 11 agreement. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (motion for summary judgment "must stand or fall on the grounds expressly presented in the motion").

can be appealed." *Arredondo v. City of Dallas*, 79 S.W.3d 657, 665 (Tex. App.—Dallas 2002, pet. denied). However, as discussed above, summary judgment in favor of appellee was not proper. Therefore, the trial court erred by granting the motion for severance on that basis.[8]

Severance is also permissible when "(1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues." *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658. In this case, appellants presented the same allegations against all the defendants. We conclude that the claims against appellee are so interwoven with the remaining action that they involve the same facts and issues. Therefore, severance under this procedure was also erroneous.

Having concluded the trial court erred by severing the claims against appellee, we must consider whether the severance order harmed appellants. *See* TEX. R. APP. P. 44.1(a)(1) (error not reversible unless it "probably caused the rendition of an improper judgment"). Severing appellants' claims against appellee from the claims against the remaining defendants would require appellants to prove the same facts twice, which would not "do justice, avoid prejudice and further convenience." *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658. We conclude the erroneous grant of the motion for severance is reversible.

We sustain appellants' second issue.

---

[8] In *Arredondo*, although we concluded the trial court erred by granting the motion for summary judgment, we did not conclude the trial court erred by granting the motion for severance. *See Arredondo*, 79 S.W.3d at 665, 670. The circumstances in *Arredondo* were distinguishable. That case involved more than 800 plaintiffs suing the City of Dallas. Sixteen of those plaintiffs moved for summary judgment on their claims, which the trial court granted. Although we reversed the summary judgment and remanded the case to the trial court for further proceedings, we did not address whether our reversal of the summary judgment resulted in the severance being erroneous. With hundreds of plaintiffs, that case was one of great complexity, and our decision left the trial court with the discretion whether to keep those sixteen plaintiffs severed or to reconsolidate their case with the other 800 plaintiffs. The case before us involving four defendants does not involve those complexities.

## CONCLUSION

We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.  We order the trial court to consolidate this case with cause number DC-13-13354.

/Lana Myers/

LANA MYERS

JUSTICE

141258F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

RENATE NIXDORF GMBH & CO. KG
and WATERCREST PARTNERS, L.P.,
Appellants

No. 05-14-01258-CV  V.

MIDLAND INVESTORS, LLC, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-10153-J.
Opinion delivered by Justice Myers. Justices
Francis and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings. We further **ORDER** the trial court to consolidate this cause with cause number DC-13-13354.

It is **ORDERED** that appellants RENATE NIXDORF GMBH & CO. KG and WATERCREST PARTNERS, L.P. recover their costs of this appeal from appellee MIDLAND INVESTORS, LLC.

Judgment entered this 8th day of December, 2015.