

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| RUSSELL D. MILLER AND JULIET INVESTMENTS, INC., | § | No. 08-13-00091-CV |
| Appellants, | § | Appeal from |
| v. | § | 168th District Court |
| DARLENE ARGUMANIZ, INDIVIDUALLY AND ON BEHALF OF ARGMIL, INC., | § | of El Paso County, Texas |
| | § | (TC # 2013DCV1031) |
| Appellees. | § | |

## O P I N I O N

Russell D. Miller and Juliet Investments, Inc. (collectively Miller) appeal a judgment entered against them following a jury trial in a fraud and breach of fiduciary duty case. We affirm in part and reverse and render in part.

### BACKGROUND AND PROCEDURAL HISTORY

This tort case concerns an oral agreement between shareholders to transfer a parcel of real estate to a corporation. Darlene Argumaniz brought the case on behalf of herself and the corporation, ARGMIL, Inc. (collectively Argumaniz). Russell and Darlene were the officers, directors, and sole shareholders of ARGMIL. The property that was to be transferred was warehouse property, first purchased by Darlene's spouse, Danny Gray, and another gentleman, Rodolfo Gonzalez. Gray and Gonzalez owned the property as tenants-in-common. Gray and

Darlene subsequently divorced, and Darlene was awarded an interest in the property. She began collecting the property's rentals, which were not sufficient to cover the note. Darlene then looked to Russell for assistance.

ARGMIL was formed for the purpose of acquiring the property from Darlene and Gonzalez.[1] According to Darlene, Russell orally agreed to finance the purchase and transfer the property to ARGMIL, and Darlene and Allen would then repay him. Instead of complying with this oral agreement, Russell purchased the note on the property and subsequently foreclosed, never tendering the property to ARGMIL.

The case was tried before a jury in November of 2012. The jury found that Russell's failure to tender the property to ARGMIL constituted fraud against Darlene and a breach of the fiduciary duty he owed to ARGMIL. The jury further found that Darlene sustained $378,200 in past economic damages as a result of Russell's fraud, as well as $400,000 in mental anguish damages. On the breach of fiduciary duty claim, the jury awarded ARGMIL $378,200 for past lost profits, and $50,000 for future lost profits. The trial court then entered judgment confirming these jury awards. The trial court also awarded attorneys' fees in Darlene's favor: $165,831.25 for the trial work, and a combined $162,500 for work stemming from the various stages of any appeal.

### RUSSELL'S POINTS OF ERROR

Russell challenges the judgment in seven points of error. In his first two points, he argues that the oral agreement to transfer the property to ARGMIL violated the statute of frauds, thus altogether barring Darlene's claims. In his third point, he challenges the legal sufficiency of

---

[1] Allen Miller and Argumaniz originally made up the officers, directors, and sole shareholders of ARGMIL, but when Allen's ex-wife threatened certain legal action that he feared might affect the corporation, Allen's father, Russell, agreed to take Allen's place in ARGMIL.

2

the evidence supporting the jury's awards for lost profits, economic damages, and mental anguish. Issue Four challenges the jury's awards for lost profits and economic damages as constituting a double recovery. In his fifth and sixth points of error, Russell challenges the breach of fiduciary duty claim, arguing that he did not owe a fiduciary duty to convey the property to ARGMIL and that there is no evidence establishing that ARGMIL suffered damages.[2] Finally, Russell challenges the trial court's award of attorneys' fees in his seventh point of error.

### STATUTE OF FRAUDS

Darlene contends that Russell has failed to preserve error with regard to his statute of frauds defense. We agree. The statute of frauds is an affirmative defense, and it is waived if not pled. TEX.R.CIV.P. 94; *Phillips v. Phillips*, 820 S.W.2d 785, 791 (Tex. 1991). Because a judgment must conform to the pleadings, a trial court cannot grant judgment notwithstanding the verdict based on an unpled statute of frauds defense. TEX.R.CIV.P. 301; *Hays Consol. ISD v. Valero Transmission Co.,* 645 S.W.2d 542, 545-46 (Tex.App.--Austin 1982, writ ref'd n.r.e.). Russell alleged the statute of frauds as a defense against a breach of contract claim previously asserted by Darlene and indeed obtained a partial summary judgment. He did not pled the statute of frauds as a defense against either the fraud claim or the breach of fiduciary duty claim. Russell counters that he triggered the statute of frauds by specifically referencing the oral agreement that is the basis of the defense. He did so, however, only by asserting the statute of frauds as a defense against the breach of contract claim. This is distinct from the procedural circumstances present in the cases upon which he relies. In *Simmons v. Compania Financiera Libano*, a party's pleading failed to explicitly raise the statute of frauds, but nonetheless asserted that "no oral agreements [were] binding" against the party. *Simmons v. Compania Financiera*

---

[2] Russell does not challenge the jury's finding that he committed fraud, however.

3

*Libano, S.A.*, 830 S.W.2d 789, 793 (Tex.App.--Houston [1st Dist.] 1992, writ denied). This language, although imprecise, was sufficient to invoke the defense. *Id.* Russell's pleading is different. It contains no imprecise or global reference to the statute of frauds, but instead makes a single, very specific reference expressly limiting the defense to Darlene's breach of contract claim: "Plaintiffs did not provide proof of satisfying the statute of frauds *on their alleged breach of contract claim* wherein Plaintiff alleges that Defendant Russell D. Miller promised that he would personally pay off the outstanding note and convey the Property to ARGMIL, INC." [Emphasis added]. As such, *Simmons* does not support Russell's argument. Nor does *McGraw,* which reaches essentially the same conclusion as *Simmons* although on a different affirmative defense. *See McGraw v. Brown Realty Co*., 195 S.W.3d 271, 275 (Tex.App.--Dallas 2006, no pet.)(holding same regarding pleading of implied warranty defense).

Russell further argues that he triggered the statute of frauds by raising it in his summary judgment motions. A motion for summary judgment is not a pleading and it cannot not invoke an otherwise unpled affirmative defense. *In the Interest of S.A.P*., 156 S.W.3d 574, 576 n.3 (Tex. 2005); TEX.R.CIV.P. 45(a). We thus conclude that Russell waived any statute of frauds defense to the fraud and breach of fiduciary duty claims. We overrule the first and second points of error.

### LEGAL SUFFICIENCY OF THE EVIDENCE SUPPORTING THE DAMAGE AWARDS

In his third point of error, Russell challenges the legal sufficiency of the evidence supporting the jury's damage awards. When considering the legal sufficiency of a finding, we must credit evidence favorable to the judgment if a reasonable fact finder could, disregard contrary evidence unless a reasonable fact finder could not, and reverse the fact finder's determination only if the evidence presented in the trial court would not enable a reasonable and

4

fair-minded fact finder to reach the judgment under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We sustain legal sufficiency challenges if the record reveals: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *Id*. at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

### *Past and Future Lost Profits*

Russell first challenges the legal sufficiency of the evidence supporting the jury's awards for past and future lost profits, which Darlene sought on behalf of ARGMIL in connection with the breach of fiduciary duty claim. Lost profits are recoverable for a breach of fiduciary duty when it is shown that the loss is the natural and probable consequence of the complained of act. *Texas Instruments, Inc. v. Teletron Energy Management, Inc*., 877 S.W.2d 276, 279 (Tex. 1994). In reviewing the legal sufficiency of a lost profits award, we must determine whether the amount awarded was established with reasonable certainty through competent evidence. *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.* 960 S.W.2d 41, 50 n.3 (Tex. 1998). "When a review of the surrounding circumstances establishes that the profits are not reasonably certain, there is no evidence to support the lost profits award." *Id*., *citing Texas Instruments*, 877 S.W.2d at 279-81. At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained, although the loss need not be susceptible to exact calculation. *Holt Atherton*

5

*Industries, Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). A review of the record here reveals no such evidence.

Darlene offered evidence demonstrating that ARGMIL had never conducted any profit-generating business activity, or that it had plans to do so in the future. In the absence of such evidence, her counsel maintained during closing arguments that the property's market value equated to lost profits. This is an improper measure of damages. Lost profits are damages for the loss of income to a business, not the value of property promised but not delivered.[3] *See Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002)(holding that an "increase in the market value of goods never delivered under a contract is not the same as lost profits").

Although Darlene also relied on rentals she and Russell collected from leasing the property in support of the lost profits claim, this evidence likewise fails to support the award. First, her coalesced reliance on rentals and market value is problematic in and of itself. Recovery of lost profits must be predicated on one complete calculation. *Heine*, 835 S.W.2d at 85 (holding that evidence of several differing methods of calculating lost profits failed to establish one complete calculation). Second, even when Darlene's reliance on market value is overlooked, the evidence regarding the rentals is legally insufficient to support the award. Lost profits damages must be based on net profits, not gross revenue. *Id.* at 83 n.1; *see also Miga*, 96 S.W.3d at 213. Russell's unrefuted testimony was that the rentals were barely sufficient to cover the property taxes. Darlene similarly testified that the rent was insufficient to satisfy the note on the property. Far from supporting the jury's awards, the rentals were insufficient to cover even the property's most basic expenses.

---

[3] The market value of the property was also the basis of Darlene's claim for economic damages resulting from fraud. As she readily concedes, the recovery of both economic damages and lost profits was an impermissible double recovery. *See State v. Whataburger, Inc.*, 60 S.W.3d 256, 262 (Tex.App.--Houston [14th Dist.] 2001, pet. denied)(awards for lost profits and change in market value constituted a double recovery).

We sustain the portion of Russell's third point of error pertaining to the award of past and future lost profits. Because these were the only damage awards stemming from the breach of fiduciary duty claim, we overrule Russell's fourth, fifth, and sixth points (regarding double recovery, the existence of a fiduciary duty, and whether ARGMIL was damaged by any such breach) as moot.

### Past Economic Damages Resulting from Fraud

Russell next challenges the legal sufficiency of the evidence supporting the jury's award of past economic damages on Darlene's fraud claim.[4] He contends that the only conceivable economic injury that Darlene suffered was the loss of her interest in the property itself. Russell does not suggest that the loss of this interest was an improper measure of damages, but argues instead that there is no evidence to support the award because Darlene failed to establish: (a) the market value of the property, and (b) the extent of her ownership interest in it. We conclude that Darlene presented sufficient evidence regarding the property's market value, and that the extent of her ownership interest goes to the amount, not the existence of damages, which is beyond the scope of what Russell preserved for appeal.

Darlene testified that the market value of the property was, in her opinion, $375,000.[5] The "property owner rule," which falls under Texas Rule of Evidence 701, permits a property owner to give opinion testimony about the value of his or her property. *Natural Gas Pipeline Co. of America v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012); TEX.R.EVID. 701. Such testimony may not be based solely upon the property owner's *ipse dixit*, or mere "say-so," but is instead subject to the same requirements as other opinion testimony. *Id.* at 155-56. Under Rule 701, lay

---

[4] The jury did not award any recovery for future economic damages resulting from fraud.

[5] The jury's award for past economic damages, $378,200, exceeded Darlene's opinion of the property's market value by $3,200.

7

opinion testimony is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." TEX.R.EVID. 701. In line with these principles, the Texas Supreme Court has determined that a property owner's valuation testimony must have a basis in fact, such as evidence of price paid, nearby sales, tax valuations, or appraisals. *Justiss*, 397 S.W.3d at 159. Russell argues that Darlene failed these requisites because her valuation opinion was based solely on an appraisal of the property that was hearsay and irrelevant. We disagree.

The appraisal Darlene relied upon was completed in 1998 by a certified appraiser, Gonzalo Laje, who was not called as a witness at trial. Laje's appraisal puts the market value of the property at $375,000. This became the basis of Darlene's own valuation opinion.[6] Russell is correct that the appraisal constituted hearsay, but Darlene was entitled to base her opinion on it nonetheless. Like expert testimony, "landowner valuation testimony may be based on hearsay." *Justiss*, 397 S.W.3d at 158. Russell's relevancy argument is based on the fact that the appraisal was completed in 1998, almost thirteen years prior to the date of the trial. But as Darlene argues in response, the appraisal was only four years old at the time of the foreclosure that is the basis of the claims. Relevant evidence is simply that which tends to make the make the existence of any consequential fact more or less probable. TEX.R.EVID. 401. While an appraisal of the property performed closer in time to the foreclosure would perhaps be entitled to more weight, we cannot say that one completed four years prior is *irrelevant*. The appraisal provided a proper factual basis for Darlene's valuation testimony pursuant to Rule 701 and the property owner rule. *See Justiss*, 397 S.W.3d at 155; and TEX.R.EVID. 701.

---

[6] Laje's appraisal was subject to his assumption that several anticipated renovations had been completed at the property. Russell argues that there was insufficient evidence establishing that these renovations had indeed been completed, but this argument fails. It was Darlene's unrefuted trial testimony that her former husband had completed $75,000 worth of renovations after he acquired the property in 1998.

8

Russell next alleges that there is no evidence to support the economic damages award because Darlene failed to establish the extent of her interest in the property. More specifically, he argues that she owned only one-half of the property, as she owned it as a tenant-in-common with Gonzalez prior to the foreclosure, and that the divorce decree between Darlene and Gray awarded her only two of the four parcels constituting the property. Russell also claims that Darlene failed to establish what amount of the property's note had been satisfied, making it uncertain how much equity Darlene had. These matters go to the amount, rather than the existence of damages.

Unlike a legal sufficiency review of a lost profits award, which entails an analysis of the reasonable certainty of the evidence in support of the amount of the award, we are aware of no such requisite in reviewing the legal sufficiency of an award compensating a fraud claimant for the difference of value as represented and the actual value received. *See Formosa Plastics*, 960 S.W.2d at 50 n.3 (establishing that the reasonable certainty requisite of a lost profits award falls under legal sufficiency). Russell has not directed us to any authority establishing such a requirement outside of lost profits. Further, the standard of review for an excessive damages complaint is factual sufficiency of the evidence, not legal sufficiency. *See, e.g., Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986). Russell has not raised any factual sufficiency points. He did not file a motion for new trial, which is required to preserve a complaint concerning the excessiveness of damages found by a jury. *See* TEX.R.CIV.P. 324(b)(4). We overrule the portion of the third point of error pertaining to the legal sufficiency of the fraud-based economic damages award.

9

*Past Mental Anguish Award*

The final portion of Russell's third point of error is a legal sufficiency challenge to the jury's award of past mental anguish damages.[7] An award for mental anguish will survive a legal sufficiency challenge when the plaintiff has introduced direct evidence of the nature, duration, and severity of his or her mental anguish, thereby establishing a substantial disruption in his or her daily routine. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444-45 (Tex. 1995). But "generalized, conclusory descriptions of how an event affected a person are insufficient evidence on which to base mental anguish damages." *Hancock v. Variyam*, 400 S.W.3d 59, 69 (Tex. 2013), *quoting Service Corp. Intern. v. Guerra*, 348 S.W.3d 221, 232 (Tex. 2011). In *Guerra*, for instance, a decedent's daughters sued a cemetery for moving the decedent's body against their wishes. *Guerra*, 348 S.W.3d at 226. None of the daughters identified a specific "high degree of mental pain and distress," or a substantial disruption of their daily routine. *Id.* at 232. Descriptions to the effect that they were "devastated," "not at peace," were "always wondering," and that "[i]t was hard to hear how [the cemetery] stole [the decedent] from his grave and moved him" were too generalized, and failed to demonstrate that the daughters suffered a substantial disruption of their daily routines. *Id.*

Here, Darlene testified that she was "very depressed," "scared," "concerned," "nervous," "very angry," and "kind of lost." She cried quite a bit, could not sleep, cried herself to sleep frequently, and it was hard to concentrate during the day. Yet she continued to be employed throughout the ordeal, and navigated through her days by being strong for her daughter. Darlene's current husband testified that he saw her cry for a duration of ten to fifteen minutes as frequently as three or four days a week. Although Darlene cried in front of her husband, she was

---

[7] The jury awarded Argumaniz $400,000 for past mental anguish on her fraud claim, but awarded her nothing for future mental anguish.

"as strong as possible" in front of her children. Her son testified that Darlene gained weight during these events, and that the loss of the property affected her for "probably a solid year." In sum, while this witness testimony constituted some evidence of the nature and duration of the emotional pain experienced, it failed to demonstrate that Darlene suffered a substantial disruption of her daily routine as a result. *See Parkway Co.*, 901 S.W.2d at 444. Because the jury's award of past mental anguish damages is not supported by legally sufficient evidence, we sustain this portion of Russell's third point of error.

## ATTORNEYS' FEES

Russell's final point of error challenges the trial court's award of attorneys' fees. A trial court's assessment of attorney fees is reviewed for an abuse of discretion. *Dillard Dept. Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex.App.--El Paso 2002, pet. denied). Russell presents several arguments, including that Darlene did not prevail on the only cause of action under which fees were recoverable--breach of fiduciary duty. Attorney fees are generally not recoverable for common law fraud. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006). Darlene responds by asserting that there were two fraud grounds alleged in her pleadings: common law fraud and statutory fraud on a transaction involving stock in a corporation, pursuant to Section 27.01 of the Texas Business and Commerce Code.[8] *See* TEX.BUS.&COM. CODE ANN. § 27.01 (West 2009). Reasonable and necessary attorneys' fees are recoverable under Section 27.01 when a person makes a false representation or promise for the purpose of inducing another to enter into a contract involving stock in a corporation. *Id.* But this is not the species of fraud on which the jury was charged.

---

[8] Statutory fraud under Section 27.01 includes fraud in both real estate and corporate stock transactions, but the trial court granted partial summary judgment against Darlene's statutory real estate claim. *See* TEX.BUS.&COM.CODE ANN. § 27.01 (West 2009).

11

The elements of statutory fraud under Section 27.01(a) are essentially the same as the elements of common law fraud, except that Section 27.01(a) does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages. *See Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 963 (Tex.App.--Dallas 2013, no pet.); *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 867 (Tex.App.--Austin 2001, pet. denied); and TEX.BUS.&COM. CODE ANN. § 27.01(a). This is reflected in the pattern jury charges for common law fraud and statutory fraud under Section 27.01. *See* State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Ins. & Emp't* §§ 105.1-105.3; and 105.7-105.10 (2012).

Here, the jury was specifically instructed that fraud occurs when a "misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion," tracking identically the language of PJC 105.2, which is the instruction for common law fraud. *See* PJC § 105.2. Indeed, the entirety of the fraud question presented to the jury (question number three) tracks nearly identically the entirety of the PJC's common law fraud questions and instructions. *See* PJC §§ 105.1, 105.2, and 105.3A, 105.3B, and 105.3E. On the other hand, certain language that is particular to the pattern instructions for statutory fraud is not present. For instance, the PJC's 27.01-specific instruction that the false representation or promise be "made to a person for the purpose of inducing that person to enter into a contract" is absent. *See* PJC §§ 105.8 and 105.9. Further, no portion of the jury charge referenced that Darlene's fraud claim related to or concerned stock in a corporation, which is the express statutory purpose of Section 27.01.[9] *See* TEX.BUS.&COM.CODE ANN. § 27.01(a).

---

[9] It is also worth noting that the exemplary damages question relating to fraud (which the jury answered affirmatively, but which did not result in the rendering of damages because the verdict was not unanimous) tracked PJC Section 115.37B, which is the PJC's exemplary damages question for common law fraud. *See* PJC § 115.37B. Conversely, the question did not include any language tracking the PJC's statutory fraud exemplary damages counterpart, PJC Section 105.11, which recites Section 27.01's requisite for exemplary damages: that the misrepresenting party have "actual awareness" of the falsity of the representation. *See* PJC §§ 105.11; TEX.BUS.&COM.CODE ANN. § 27.01(c).

These circumstances, coupled with the fact that the judgment awarding fees does not in any way mention statutory fraud, corporate stock, or Section 27.01, make it clear that the jury was charged with determining Darlene's common law fraud claim, not her Section 27.01 claim. Attorney's fees were not recoverable and the trial court abused its discretion by awarding them. *See Chapa*, 212 S.W.3d at 304.  We sustain Russell's seventh point of error.

We affirm the trial court's judgment with respect to the award of past economic damages for fraud, and reverse and render judgment in Russell's favor on the awards for past and future lost profits on the breach of fiduciary duty claim.  We likewise reverse and render judgment in Russell's favor on the award of attorneys' fees.


February 11, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Barajas, C.J., (Senior Judge)
(Barajas, C.J., Senior Judge, sitting by assignment)