

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| HIBERNIA ENERGY III, LLC | § | No. 08-21-00092-CV |
| Appellant, | § | Appeal from the |
| v. | § | 112th Judicial District Court |
| FERAE NATURAE, LLC, | § | of Reagan County, Texas |
| Appellee. | § | (TC# CV02322) |

### OPINION ON CROSS-MOTIONS TO REVIEW
### SUPERSEDEAS BOND

Pending before the Court are cross-motions filed by Appellant and Appellee seeking review of the trial court's order setting the amount of a supersedes bond. For the reasons below, we remand the matter to the trial court to take additional evidence and to enter findings of fact in support of any bond amount it may enter. *See* TEX.R.APP.P. 24.4(d). In doing so, we recognize that in issuing our opinion on the merits today, the first stage of Hibernia's appeal has ended. That said, Hibernia has the right to seek rehearing of our decision and to file a petition for review with the Texas Supreme Court. Thus, the bond amount necessary to protect Ferae's interests during the appeal remains an open question, but it is not a question we can resolve on the record before us.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Proceedings in the Trial Court

The trial court granted summary judgment for Appellee Ferae Naturae, LLC (Ferae) on its lawsuit seeking foreclosure of a judgment lien that encumbered the interests in a mineral lease owned by Appellant Hibernia Energy III, LLC (Hibernia). After the trial court entered its final judgment and an order of sale, Hibernia and its then co-appellant filed notices of appeal, and sought to supersede the judgment by submitting a cash deposit with the court clerk's office of $982—which was double the amount of Ferae's court costs—in lieu of posting a supersedeas bond.[1] Ferae then challenged the supersedeas bond, contending that the cash deposit was insufficient to protect its foreclosable interest in the lease, as Hibernia was continuing to work the lease while the appeal was pending. In doing so, Ferae claims Hibernia was depleting the minerals located on the lease and was thereby reducing the value of Ferae's foreclosable interest.

Following a hearing on May 25, 2021, the trial court ordered Hibernia to post a supersedeas bond in the amount at $300,000 which Hibernia promptly posted. In July 2021, Ferae moved to increase the bond amount based on changed circumstances. Along with that motion, Ferae served discovery on Hibernia seeking information about the revenues it was receiving from a producing well located on the lease. Hibernia later furnished information that the well had reached "payout" in September 2021 and had begun generating revenue at that time.[2] The trial court held a second hearing in December 2021, at which it expressly stated that it considered the payout status a changed circumstance that warranted an increase in the bond.

---

[1] As reflected in our opinion, Hibernia's co-appellant, TRP Midland, LLC, resolved its dispute with Ferae, and they jointly moved to dismiss TRP's appeal, which this Court granted on October 21, 2021.

[2] The payout from a well is the point at which all costs of leasing, drilling, exploring, and operating the well have been recovered from production, and the well has become profitable. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 180 n.2 (Tex. 2012).

2

At the December hearing, Ferae argued that based on information that Hibernia had provided to it, the well had been generating revenues averaging $150,000 a month for the past three months. Ferae urged the court to multiply that number by 12 months—the average time it takes an appeal to be resolved—and to set the bond amount at $1.8 million dollars. Hibernia countered that the well cost over ten million dollars to drill and complete, and that Ferae's calculations of the well's revenue did not account for an overriding 25% royalty interest on the lease, or for Hibernia's ongoing internal operating expenses. Hibernia therefore suggested that the current bond amount of $300,000 was adequate to protect Ferae's interests. The trial court, however, set a bond amount of $750,000, and Hibernia thereafter posted a bond in that amount. No finding of facts were made in connection with this ruling.

In May 2022, Ferae filed a third motion asking the court to reconsider its prior ruling and to further increase the bond amount, arguing that Hibernia had received revenues from the well attributable to its foreclosable interest in excess of $750,000, and that its interests were therefore no longer protected by the current bond.[3] At a June 2022 hearing on that motion, Ferae introduced an exhibit containing the following calculations that it made from information that Hibernia had produced in discovery: (1) gross revenue from the well attributable to its foreclosable interest from May 2021 (when the appeal was first filed) through March 2022 (the most recent figures available) total $1,912,451.34; (2) gross revenue for another six months of revenue, using the average monthly revenue figure as provided by Hibernia, total $988,995.69; and (3) using those average monthly figures, the projected amount of total gross revenue that would be generated from the well during the appeal was $2,901,447.04. Ferae requested that the court increase the bond to that amount. Hibernia again countered that Ferae's calculations of the well's revenue only reflected a

---

[3] Ferae also pointed out technical deficiencies in the bond that Hibernia had posted, which the trial court ordered Hibernia to correct. Those deficiencies are not the subject of the parties' current motions.

gross working interest (and not net revenue) and did not account for the overriding royalty interests on the lease. Hibernia further objected that Ferae's calculations were not supported by expert witness testimony. Hibernia, however, did not provide any contrary figures to suggest what it believed were the correct revenue figures for the well. The trial court denied Ferae's motion.

### B. Pleadings Filed in This Court

Ferae then filed a motion with this Court requesting that we review the bond amount, renewing its argument that the $750,000 bond is inadequate to protect its interests on appeal. In its motion, Ferae stated that it had requested updated revenue information from Hibernia, but had yet to receive any, meaning that the most recent revenue figures it had were from March 2022. And using the same calculations as it did in the trial court—based on the average monthly revenues generated by the well through March 31, 2022—Ferae projected that the well's gross revenues would total $3,890,442.73 from May 2021 (when the appeal was first filed) through March 2023 (when it anticipated this Court would issue its mandate finalizing the appeal). Although Ferae requested that we use this gross figure in setting the bond amount, it requested in the alternative that we set the bond in the amount of the well's total projected net revenue for this same period, which it calculates as $2,461,290.38.[4]

Hibernia responded with its own motion that asks us to vacate the trial court's order increasing the bond to $750,000, contending: (1) that there were no changed circumstances warranting the increase in the bond; (2) that the trial court used the wrong method for calculating the bond amount; and (3) that it was in any event unwarranted and excessive. Hibernia contends that we should vacate the $750,000 bond and either reinstate the trial court's original order setting

---

[4] In its motion, Ferae calculated that the total net revenue to date from the well attributable to its foreclosable interest as $1,216,727.86, and again projecting out to March 2023, Ferae estimates that the total net revenues up to that time would be $2,461,290.38.

the bond at $300,000, or reduce the bond to $5,000, or some other "nominal amount," to cover Ferae's court costs while the matter is pending on appeal.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

A judgment debtor who has filed a notice of appeal may suspend enforcement of the judgment pending appeal by, among other things, filing with the trial court clerk a "good and sufficient bond" in an amount required by Rule 24.2. *See EIS Dev. II, LLC v. Buena Vista Area Ass'n*, No. 08-22-00006-CV, 2022 WL 575178, at *3 (Tex.App.--El Paso Feb. 25, 2022, no pet.), *citing* TEX.R.APP.P. 24.1(a)(2); *Texas Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 305-06 (Tex.App.--El Paso 2009, mand. denied). Under Rule 24.2, the proper amount of supersedeas bond depends on which of three types of judgment are at issue. TEX.R.APP.P. 24.2(a)(1)-(3); *see also EIS Dev. II, LLC*, 2022 WL 575178, at *3. First, when the judgment is for the recovery of money, the amount of the bond must equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. TEX.R.APP.P. 24.2(a)(1). Second, if the judgment is for the recovery of an interest in real or personal property, the amount set by the trial court must be at least: "(A) the value of the property interest's rent or revenue, if the property interest is real; or (B) the value of the property interest on the date when the court rendered judgment, if the property interest is personal." TEX.R.APP.P. 24.2(a)(2). Or third, when the judgment is for "something other than money or an interest in property," the trial court must set the amount and type of security that the judgment debtor must post in an amount that will "adequately protect the judgment creditor against loss or damage that the appeal might cause." TEX.R.APP.P. 24.2(a)(3).

In general, a trial judge is given broad discretion in determining the amount and type of security required. *See Hernandez v. U.S. Bank Tr. N.A. for LSF8 Master Participation Tr.*, 527

5

S.W.3d 307, 309 (Tex.App.--El Paso 2017, no pet.); *see also EIS Dev. II, LLC*, 2022 WL 575178, at *3 (recognizing the discretionary nature of a trial court's determination of a bond amount). In addition, even after the trial court's plenary power has expired, the trial court has continuing jurisdiction to: "(1) order the amount and type of security and decide the sufficiency of sureties; and (2) if circumstances change, modify the amount or type of security required to continue the suspension of a judgment's execution." TEX.R.APP.P. 24.3(a); *see also Lowe v. Monsanto Co.*, 965 S.W.2d 741, 742 n. 8 (Tex.App.--El Paso 1998, pet. denied) (recognizing the trial court's continuing jurisdiction under Rule 24.3 to modify a supersedeas bond based on changed circumstances).

On a party's motion, an appellate court may review the sufficiency or excessiveness of a trial court's order setting a supersedeas bond. *See* TEX.R.APP.P. 24.4(a). We apply an abuse of discretion standard in reviewing a trial court's order setting a bond. *EIS Dev. II, LLC*, 2022 WL 575178, at *3, *citing Rowe v. Watkins*, 324 S.W.3d 111, 113 (Tex.App.--El Paso 2010, no pet.). A trial court abuses its discretion when it renders an arbitrary and unreasonable decision lacking support in the facts or circumstances of the case, or when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Hernandez*, 527 S.W.3d at 309. A trial court, however, has no discretion in determining what the law is or in applying the law to the facts. *See Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 624 (Tex. 2005). Thus, a trial court's failure to correctly analyze or apply the law is considered an abuse of discretion. *Id.*

We determine whether a trial court abused its discretion using a two-step inquiry: "'(1) [d]id the trial court have sufficient information on which to exercise its discretion; and (2) did the trial court err in the application of its discretion?'" *EIS Dev. II, LLC*, 2022 WL 575178, at *3, *quoting Rowe*, 324 S.W.3d at 113. In step one, we utilize the traditional standards reviewing

evidentiary sufficiency. *Id.* In step two, we must determine whether, based on the record, the trial court's decision was arbitrary and unreasonable. *Id.*; *see also Texas Custom Pools*, 293 S.W.3d at 305-06 (discussing two-step inquiry). As with any abuse of discretion review, the question is not whether the reviewing court would have come to the same conclusion as the trial court, but whether the court acted without reference to any guiding rules and principles. *EIS Dev. II, LLC*, 2022 WL 575178, at *3; *Montelongo v. Exit Stage Left, Inc.*, 293 S.W.3d 294, 297 (Tex.App.--El Paso 2009, no pet.).

If we determine that a trial court abused its discretion in setting the bond amount, we may order the amount of the security increased or decreased, or make other necessary changes to the bond order. TEX.R.APP.P. 24.4(d); *EIS Dev. II, LLC*, 2022 WL 575178, at *3. In addition, we have the discretion to remand the matter to the trial court "for entry of findings of fact or for the taking of evidence." TEX.R.APP.P. 24.4(d); *Ryan v. Fender*, No. 12-21-00242-CV, 2022 WL 2062475, at *2 (Tex.App.--Tyler June 8, 2022, no pet.) (mem. op.). Based on resolution of the legal issues raised by the parties, we find it necessary to follow the latter course and remand to the trial court for both the taking of additional evidence and the entry of findings of fact.

### III. RULE 24.2(A)(2) GOVERNS THE BOND AMOUNT

In their cross-motions, the parties argue over how we should categorize the judgment, and consequently which provision in Rule 24.2 applies in determining the bond amount. Ferae contends that the judgment was for the recovery of "an interest in property," and that the trial court therefore properly concluded that Rule 24.2(a)(2) applies in determining the bond amount. Hibernia, on the other hand, contends that we should categorize the judgment as being "something other than money or an interest in property," and that Rule 24.2(a)(3) therefore applies in determining the amount. We agree with Ferae on this point.

7

### A. Foreclosure Judgments are Included in Rule 24.2(a)(2)

The resolution of this issue turns primarily on what the Texas Supreme Court intended when it used the term "an interest in property" in enacting Rule 24.2. More specifically, is a foreclosure judgment one for the recovery of "an interest in property" under that rule. Rule 24.2 does not define "an interest in property" but we find guidance in the prior versions of the supersedeas bond rules, and the court's comments in enacting the current rule.

The parties agree that former Rule 47(d) of the Texas Rules of Appellate Procedure—the predecessor to Rule 24.2—expressly covered situations involving foreclosure suits. Former Rule 47(d) provided that: "When the judgment is for the recovery of or foreclosure upon real estate, the judgment debtor may suspend the enforcement of the judgment insofar as it decrees the recovery of or foreclosure against said specific real estate by posting security in the amount and type to be ordered by the trial court, not less than the rents and hire of said real estate . . ." *See Culbertson v. Brodsky*, 775 S.W.2d 451, 453 (Tex.App.--Fort Worth 1989, writ dism'd w.o.j.) (*quoting* former Rule 47(d)). But Rule 24.2—in either subsection at issue—makes no mention of foreclosure suits. TEX.R.APP.P. 24.2(b), (c). Hibernia takes this omission to mean that the court intended to exclude foreclosure judgments from judgments involving an interest in property under Rule 24.2(a)(2). It argues that the omission proves that foreclosure judgments are for something other than an interest in property, thus making Rule 24.2(a)(3) applicable in determining the amount of a supersedeas bond.

Ferae, however, provides a more compelling explanation for Rule 24.2's omission of foreclosure suits, which persuades us that the rule intended to include foreclosure judgments under the broad phrase "recovery of an interest in real or personal property[.]" TEX.R.APP.P. 24.2(a)(2). First, Ferae points out that besides Rule 47(d), which expressly referred to foreclosure judgments,

Rule 47 contained a separate provision pertaining to judgments for the "recovery of land or other property," which similarly provided that the supersedeas bond amount for those judgments was to correspond to "the value of the rent or hire of such property during the appeal . . . ." *See Culbertson*, 775 S.W.2d at 453 (quoting former Rule 47(c)).[5] Ferae further points out that the court's "Notes and Comments" to the 1997 Rule Change for rule 24.2(a)(2) make it clear that the court intended to merge the two sections in Rule 47 relating to judgments involving "real estate" (subsection (d)) and "property" (subsection (c)), into one rule, specifically stating that "[a]ll provisions regarding superseding a judgment for an interest in property are merged into subparagraph 24.2(a)(2)[.]"[6] By merging these two provisions, the court intended to include foreclosure judgments in the broader and more inclusive provisions of Rule 24.2(a)(2), as being a judgment for the recovery of an "interest" in property. *See generally Texas Educ. Agency v. Houston Indep. Sch. Dist.*, 609 S.W.3d 569, 574 (Tex.App.--Austin 2020, no pet.) (noting that "[i]n 1984, the applicable rule, which later became Rule 24.2(a)(3), was amended to allow the trial court discretion to decide whether to allow a supersedeas bond when the judgment does not involve money, property, or

---

[5] Former Rule 47(c) of the Texas Rules of Appellate Procedure provided that:

> When the judgment is for the recovery of land or other property, then the bond, deposit, or orders which adequately protect the judgment creditor for any loss or damage occasioned by the appeal shall be further conditioned that the judgment debtor shall, in case the judgment is affirmed, pay to the judgment creditor the value of the rent or hire of such property during the appeal, and the bond, deposit, or alternate security shall be in the amount estimated or fixed by the trial court.

*See Culbertson v. Brodsky*, 775 S.W.2d 451, 453 (Tex.App.--Fort Worth 1989, writ dism'd w.o.j.) (quoting former Rule 47(c)).

[6] Ferae has also provided a copy of the Texas Supreme Court Advisory Committee's meeting notes from November 22-23, 1996, stating that it was it was Committee's intent to "merge" both former Rule 47(c) and Rule 47(d) into a single, "simplified" new rule—Rule 24.2(a)(2), to provide the same method for calculating the amount of a supersedeas bond for all judgments involving an interest in property. *See* TEX.SUPREME COURT ADVISORY COMM., AGENDA - VOLUME 1 NOV. 23-23, 1996 SCAC MEETING, https://www.txcourts.gov/All_Archived_Documents/SupremeCourtAdvisoryCommittee/Meetings/1996/agendas/November_22_1996.pdf.

foreclosure"), *citing In re State Bd. for Educator Certification*, 411 S.W.3d 576, 577 (Tex.App.--Austin 2013, orig. proceeding) (Jones, C.J., concurring).

And we agree with Ferae that the Texas Supreme Court's use of the term, "interest in property" as used in Rule 24.2(a)(2) was intended to encompass judgments foreclosing on a lien. We recognize that a lien is not itself "property," but is instead a right to have satisfaction out of the property to secure payment of a debt. *See Harris Cnty. Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n*, 933 S.W.2d 570, 577 (Tex.App.--Houston [1st Dist.] 1996, writ denied). In effect, a lien simply gives a party the right to foreclose on the property it encumbers. *See Onyx Ref. Co. v. Evans Prod. Corp.*, 182 F.Supp. 253, 256 (N.D. Tex. 1959) (observing that a "judgment lien does not create any right of property or interest in the lands upon which it is a lien," and instead "gives the right to foreclosure, either by execution or independent suit, which, when done, will relate back so as to exclude adverse interests subsequent to the fixing of the lien."). Yet a lien is still considered an "interest in property." As our sister court in Fort Worth recognized, the term "lien" is defined in section 12.001(3) of the Texas Civil Practices and Remedies Code as "a claim *in property* for the payment of a debt and includes a security interest." *In re Hai Quang La*, 415 S.W.3d 561, 566 (Tex.App.--Fort Worth 2013, pet. denied), *citing* TEX.CIV.PRAC. & REM.CODE ANN. § 12.001(3) (emphasis added). And as the court further pointed out, the dictionary definition of "lien" mirrors this definition, providing that a lien is "a legal right or interest that a creditor has in another's *property*, lasting usu[ally] until a debt or duty that it secures is satisfied." *Id.* (emphasis added), *citing* BLACK'S LAW DICTIONARY 1006 (9th ed. 2009); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "lien" as "[a] legal right or interest that a creditor has in another's property, lasting until a debt or duty that it secures is satisfied"). Thus, Ferae's judgment

10

lien did in fact give it a pre-existing "interest" in the subject property, which it was seeking to "recover" in its foreclosure lawsuit.

Although case law discussing the applicability of Rule 24.2(a)(2) in the context of a foreclosure judgment context is scarce, we find instructive our sister court's opinion in *Brady v. Compass Bank*. In that case, the trial court entered a judgment for the plaintiff bank which had loaned money to the defendant for a home equity loan, allowing the bank to foreclose on the property. *Brady v. Compass Bank*, No. 04-19-00021-CV, 2019 WL 1459257, at *1 (Tex.App.--San Antonio Apr. 3, 2019, no pet.) (mem. op.). The court held that the judgment was properly categorized as one involving an "interest in real property" thereby making Rule 24.2(a)(2) govern the supersedes bond. *See id.* at *2. Hibernia distinguishes *Brady* because it involved a situation in which the plaintiff held a deed of trust on the property, which gave the plaintiff a current secured interest in the subject property, while the judgment lien here did not give Ferae any such current interest. But *Brady* did not distinguish between different types of liens or different types of foreclosure suits, and instead, simply stated that the foreclosure judgment in that case was "for the recovery of an interest in real property." *Id*. And we agree with Ferae that a plaintiff who holds a lien on property has a current interest in the property, and therefore a judgment allowing a party to foreclose on a lien is by its very nature a judgment allowing a party to recover its interest in the property. *Id.*; *see also In re Levitas*, No. 13-10-00345-CV, 2010 WL 2968189, at *2-3 (Tex.App.--Corpus Christi July 27, 2010, orig. proceeding) (mem. op.) (finding that judgment setting aside bank's foreclosure of mortgagee's property and awarding ownership of the property to the mortgagee involved a "real property interest"); *cf. Poock v. Washington Mut. Bank, F.A.*, No. 01-08-00415-CV, 2009 WL 2050905, at *6 (Tex.App.--Houston [1st Dist.] July 16, 2009, no pet.) (mem. op.) (where legislature amended the venue statute to include the recovery of real property

11

or an "interest in real property," it intended to include suits in which a plaintiff is seeking judicial foreclosure of a lien), *citing In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 118-19 (Tex. 2006) (orig. proceeding) (finding that suit seeking an order from the trial court authorizing foreclosure was an action for recovery of an "interest in real property," which fixed mandatory venue in the county where the property was located).

## B. The Trial Court's Final Judgment and Order of Sale Fit Within Rule 24.2(a)(2)

Hibernia, however, finds it significant that Ferae sought not only to foreclose on its judgment lien, but also sought an order of sale of its interest in the lease. According to Hibernia, the trial court's final judgment therefore did not give Ferae immediate possession of the foreclosable interest in the lease, and in turn, did not allow Ferae to "recover" any property under Rule 24.2(a)(2). But the final judgment and order of sale allows Ferae to recover the value of its foreclosable interest in the lease from the proceeds of the sale. And therefore, the court's judgment did allow Ferae to recover its interest in the lease under Rule 24.2(a)(2). *See In re Scott Pelley, P.C.*, No. 05-21-00314-CV, 2021 WL 3891595, at *4 (Tex.App.--Dallas Aug. 31, 2021, no pet.) (mem. op.) (where trial court's judgment ordered the partition and sale of real property, the judgment was "for the recovery of an interest in real . . . property," and the supersedeas bond amount was governed by Rule 24.2(a)(2)(A)), *citing McFaddin v. Broadway Coffeehouse, LLC*, 539 S.W.3d 278, 281 (Tex. 2018) (observing that trial court set supersedeas bond amount under Rule 24.2(a)(2)(A) after it ordered a partition sale of real property, with the proceeds to be distributed to the parties).

## C. Applying Rule 24.2 (a)(2) Will Not Result in a Windfall to Ferae

Hibernia also contends that by applying Rule 24.2(a)(2) in setting the bond amount, Ferae will in effect be given a "windfall" if Ferae prevails on appeal. Hibernia points out that Ferae was

not awarded a money judgment, but that it will be able to collect on the bond if successful on the appeal, which will in effect give it a "monetary judgment" when Ferae never received any such judgment. In making this argument, however, Hibernia overlooks the intent of setting a supersedeas bond.

As the Texas Supreme Court has recognized, the amount of a supersedeas bond is meant to reflect the damages an appeal "might cause" an appellee based on the delays in enforcing the judgment. *McFadin*, 539 S.W.3d at 285; *see also Haedge v. Cent. Texas Cattleman's Ass'n*, 603 S.W.3d 824, 827 (Tex. 2020) (per curiam) (a supersedeas bond is intended to "protect the judgment creditor against loss or damage that the appeal might cause"). If an appellee prevails on appeal and the appellate court issues its final mandate, the appellee may not recover the full amount of the supersedeas bond—or in fact any amount on the bond—without evidence of the actual damages it suffered due to the delays occasioned by the appeal. *McFadin*, 539 S.W.3d at 285; *see also Adams v. Godhania*, 635 S.W.3d 454, 458 (Tex.App.--Austin 2021, pet. denied). Thus, following the appellate court's mandate, the trial court must hold an evidentiary hearing at which the successful appellee must present evidence of its actual damages. *McFadin*, 539 S.W.3d at 285; *Adams*, 635 S.W.3d at 458 (recognizing that "the initial calculation of a supersedeas bond for appeal is different from the final calculation of loss or damage that results from the appeal"). Thus, Ferae will not receive any "windfall" if it seeks to collect on the supersedeas bond. Instead, it will be entitled only to collect on the amount that represents its actual damages—if any—from the delays occasioned by Hibernia's appeal.

## IV.   THE BOND AMOUNT

The ultimate question here is whether the trial court abused its discretion when it determined that $750,000 properly reflected the value of Ferae's foreclosable interest in the lease. Before we can address that issue, two *a priori* questions need an answer.

### A.   The Change in Circumstances

At the December 2021 hearing, the trial court expressly stated that it was increasing the bond amount from $300,000 to $750,000 based on the "change in circumstance" that the well located on the lease reached payout in September—several months after the hearing that set the initial bond amount. Hibernia's motion contends this was error.[7] But because we conclude that the trial court had to set the bond based on the amount of revenues being generated by the well, we agree with the trial court that this change in the well's status constituted a material change of circumstances that warranted a reconsideration of the bond amount. *See Mitchell v. Wilmington Sav. Funds Soc'y, FSB*, No. 02-18-00089-CV, 2018 WL 4626396, at *2-3 (Tex.App.--Fort Worth Sept. 27, 2018, no pet.) (mem. op.) (affirming trial court's decision in eviction case to increase the bond amount based on evidence that the estimated rent on the subject property had increased during the appeal).

Hibernia admits that there was a change in the pay-out status, but complains that the trial court's decision to increase the bond amount was linked to an "increase of commodity prices" that had occurred since the first bond setting. According to Hibernia, the evidence it produced showed that the well's production was on a "very normal and steady decline curve" from May 2021 to December 2021. It then contends that the only increase in its revenues came from an increase in

---

[7] Hibernia also claims that there was no evidence supporting the $300,000 bond from the first hearing. We conclude that argument is moot, as our only concern is with the propriety of the current bond amount.

commodity prices. Hibernia then argues that Ferae's judgment lien cannot attach to the oil and gas produced from the well, as oil and gas are considered "personal property" after their severance from the land. Hibernia contends that the trial court erred in tying the bond amount to the "increase" in this "personal property."

The argument, however, again fails to recognize that Rule 24.2(a)(2) requires the bond amount to be calculated based on the revenues being generated from the subject property, no matter if those revenues can be considered personal property. Nor need we concern ourselves with why the increase occurred, as even Hibernia acknowledges that there was in fact an increase in the well's revenues after the trial court set its initial bond. We thus conclude that the trial court properly determined that there was a change in circumstance that gave it the authority to increase the bond under Rule 24.3(a).

### B. Gross Versus Net Revenues

The parties also dispute whether a court should consider gross or net revenues under Rule 24.2(a)(2). We conclude that net revenues are the correct yardstick by which to set the bond.

If the purpose of the supersedes bond is to protect Ferae from any damages occasioned by the appeal, it cannot have been damaged by the amount of fixed or variable costs needed to generate income which it never paid. If there is a cost of production, Hibernia is paying those costs, and Ferae is asking that Hibernia pay the costs twice, once as a cost of production, and then again as part of the bond. This result conflicts with how gross and net revenues are treated in other contexts. For instance, compensation for lost profits are generally "based on net profits, not gross revenue or gross profits." *Miller v. Argumaniz*, 479 S.W.3d 306, 311 (Tex.App.--El Paso 2015, pet. denied), *citing Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992) (the correct measure of damages for a case involving the defendant's failure to honor a warranty on

equipment that plaintiffs used in their business was the plaintiff's net lost profits, after deducting expenses, not gross profits).

In arguing for the use of gross revenues, Ferae relies on cases in which a plaintiff was awarded property subject to monthly rents, which allowed the trial court to easily set a supersedeas bond amount corresponding to the "value of the property interest's rent," as specified in Rule 24.2(a)(2). *See, e.g.*, *Mitchell*, 2018 WL 4626396, at *2-3 (trial court properly set bond amount in eviction case based on the estimated rent of the subject property). *Brady*, 2019 WL 1459257, at *2 (trial court properly set supersedeas bond amount in foreclosure suit based on monthly rent defendant was collecting on the subject property during the appeal). But none of the cases that Ferae cites discuss how to calculate the "value of the property interest's . . . *revenue*" under this same rule, and we find the cases inapplicable.[8] *See id.* (emphasis added).

## C. The Need for a Remand

Although we agree with the trial court's conclusion that a change in circumstance occurred that justified an increase in the bond amount, we cannot determine how the trial court arrived at a bond setting of $750,000.

As Ferae points out, it presented evidence at the June 2022 hearing showing that since the appeal was first filed in May 2021, the well has produced revenues in excess of $750,000. Using projected figures based on the well's average monthly earnings through March 2022, and estimating that a final mandate will not issue until March 2023, Ferae calculates that Hibernia's

---

[8] Ferae also generally relies on our sister court's observations in *Ryan v. Fender* that the dictionary definition of "revenue" means "total income produced by a given source" or "gross income returned by an investment." No. 12-21-00242-CV, 2022 WL 2062475, at *3 (Tex.App.--Tyler June 8, 2022, no pet.) (mem. op.), *citing* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1066 (11th ed. 2004). The court's reference to the definition of "revenue," however, was not germane to its decision, as the issue in that case was how to determine the amount of a supersedeas bond under Rule 24(a)(2), where the trial court had awarded the plaintiff a strip of land, which had no rental value. *Id.* at *3-4. The court determined that it could calculate the value of the strip by determining the rental value of the larger piece of land from which the strip was carved out, and by giving the strip its proportionate value of the total amount. *Id.* at * 4. Once again, however, we find this case inapplicable as our concern is with "revenues" and not "rents."

16

gross revenues during the appeal will be $3,890,442.73, while its net revenues during that period will be $2,461,290.38. Although Ferae advocates that the bond should reflect the gross revenue amount, it points out that the $750,000 bond set by the trial court is significantly lower than either revenue figure. In turn, Ferae argues that setting the bond in that amount violates Rule 24(a)(2), which expressly provides that a bond must be set in "at least" the value of the property interest's revenue. TEX.R.APP.P. 24.2(a)(2); *see also Ryan*, 2022 WL 2062475, at *3 (recognizing that Rule 24.2(a)(2) provides a "floor" for the amount of a supersedeas bond, but not a "ceiling"); *Port Isabel Logistical Terminal, Inc. v. Subsea 7 Port Isabel, LLC*, Nos. 13-21-00169-CV, 13-21-00368-CV, 2022 WL 7187142, at *14 (Tex.App.--Corpus Christi Oct. 13, 2022, no pet. h.) (mem. op.) (recognizing that the amount of security under Rule 24.2(a)(2) must be at least the property's value, but that the rule does not expressly or implicitly prohibit the trial court from ordering security above that amount).

Hibernia does not directly address the question of whether the bond setting was below the minimum amount required by Rule 24.2(a)(2), and instead primarily hangs its hat on the argument that Rule 24.2(a)(2) does not apply to Ferae's judgment—an argument we reject. Nor does Hibernia dispute the revenue numbers suggested by Ferae for setting the bond, nor does it provide any countervailing numbers.

In general, it is the appellant's burden to offer at least some evidence of the amount of security required. *See generally Drake Interiors, Inc. v. Thomas*, 531 S.W.3d 325, 328-29 (Tex.App.--Houston [14th Dist.] 2017, no pet. ) (party seeking to stay enforcement of a judgment for a recovery of a property interest under Rule 24.2(a)(2) "bear[s] the burden to offer at least some evidence of the amount of security required"). And as Hibernia has failed to come forward with

any such evidence, we might be persuaded to simply rely on Ferae's revenue numbers and order the bond increased in accordance with those numbers.

Yet several factors suggest that the better route is to remand to the trial court to take additional evidence and to reconsider the bond amount based on that evidence. First, the most recent revenue figures that Hibernia supplied were from March 2022. And as we address this issue approximately six months later, we recognize that much could have changed in the interim, not only in terms of the well's productivity, but in terms of the price Hibernia has been receiving for its sales during these last six months. We find that the correct measure of revenues for setting the supersedeas bond is net revenues, rather than gross revenues. And although Ferae has provided us with what it believes are the correct projected net revenue figures for the well's production, it has not provided us with information for how it arrived at those figures. More importantly, Hibernia repeatedly argued in the trial court that Ferae's revenue calculations did not account for the 25% overriding royalty interest on the lease or Hibernia's internal operating costs. Yet, nothing in the record suggests that the trial court made any determination of what the actual net revenue amount from the well would be during the appeal. Nor is there any information in the record from which we may make that determination.

Based on the limited nature of the record before us, we cannot calculate with any accuracy the amount of past or future net revenue from the well. Thus, we remand this matter to the trial court with instructions to take additional evidence to determine the net revenues that the well has been producing for the last six months, to reset a bond in an appropriate amount based on that determination, and to enter findings of fact in support of its bond setting. That said, we recognize that if Hibernia chooses to forgo any additional appellate proceedings, the issue of the bond will be rendered moot. So we abate the remand for 45 days, and if during that time, Hibernia does not

file either a motion for rehearing with this Court, or a petition for review with the Texas Supreme Court (or an extension of time to file any such petition), the trial court's order setting the bond at $750,000 will stand.

## V. CONCLUSION

We deny the parties' cross-motions as much as they ask this Court to either increase or decrease the amount of the supersedeas bond set by the trial court. But we remand this matter to the trial court for further proceedings in accordance with our opinion.

JEFF ALLEY, Justice

December 20, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.